## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | | |
|---|---|---|
| **Walter Black, III**<br>7502 Georgian Drive<br>Upper Marlboro, MD 20772<br>(Prince George's County)<br>**individually and on behalf of all others**<br>**similarly situated,** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
| **Plaintiff,** | : <br> : | **Case No. 21-1581** |
| **vs.** | : <br> : | **CLASS ACTION COMPLAINT** |
| **USAA General Indemnity Company**<br>USAA Building<br>9800 Frederick Road<br>San Antonio, TX 78288, | : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| **and** | : <br> : | |
| **Garrison Property and Casualty**<br>**Insurance Company**<br>USAA Building<br>9800 Fredericksburg Rd., C-3-W<br>San Antonio, TX 78288, | : <br> : <br> : <br> : <br> : <br> : | |
| **and** | : <br> : | |
| **United Services Automobile Association**<br>USAA Building<br>San Antonio, TX 78288, | : <br> : <br> : <br> : | |
| **and** | : <br> : | |
| **USAA Casualty Insurance Company**<br>USAA Building<br>9800 Fredericksburg Road<br>San Antonio, TX 78288 | : <br> : <br> : <br> : <br> : | |
| **Defendants.** | : | |

Plaintiff, Walter Black III ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint against United Services Automobile Association, USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, and USAA Casualty Insurance Company (collectively, "USAA" or "Defendants"), and alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THIS CASE

1.      This class action is brought by Plaintiff on behalf of himself and all others similarly situated seeking redress for USAA's failure to make consumers whole when it attempted to remedy its improper pricing practices that caused more than 130,000 USAA automobile insurance customers to be charged late fees illegally over an eight year period starting in 2011.  In 2019, when USAA refunded the unlawfully collected late fees to its insureds, it wrongfully withheld the interest that had accrued over the eight years the money had been in its possession.

2.      Defendant United Services Automobile Association is a reciprocal interinsurance exchange headquartered in San Antonio, Texas.  United Services Automobile Association provides insurance and other financial services to members of the armed forces and their families, often through its subsidiaries.

3.      Defendants Garrison Property and Casualty Insurance Company, USAA Casualty Insurance Company, and USAA General Indemnity Company are insurance companies headquartered in San Antonio, Texas.  All three are subsidiaries of United Services Automobile Association that underwrite insurance policies requested by members of United Services Automobile Association.

1743331-1

4.     Defendants are registered to issue insurance policies and indemnify risks in the state of Maryland in accordance with Maryland law.

5.     Beginning in June 2011 until August 2018, USAA improperly charged approximately one-hundred-thirty-one-thousand (131,000) automobile insurance policyholders, or members, late fees totaling over $8,163,969 without the legally required approval from the Maryland Insurance Commissioner ("MIC").  By doing so, USAA violated Maryland Insurance Article § 27-216(b)(3).  While USAA corrected its practice of charging late fees to individuals with Maryland billing addresses on August 24, 2018, USAA continued to charge late fees to individuals with out-of-state billing addresses with policies insuring only risks in Maryland.

6.     USAA filed new fee structures with the MIC effective on January 23, 2019, which allowed it to charge late fees to members for untimely payment.  However, pursuant to Maryland Insurance Article §§ 27-216(b)(3)(i) and (b)(3)(ii)(2), such late fees cannot exceed $10.00.  From January 23, 2019 to September 30, 2019, USAA violated the Maryland Insurance Article by charging and collecting late fees in excess of $10.00 from members holding policies insuring only Maryland risks but who used an out-of-state billing address.

7.     USAA and MIC entered into an agreed Consent Order to remedy USAA's violations of the Maryland Insurance Article. The Consent Order, which was executed on July 30, 2020, is attached hereto as **Exhibit A.**

8.     Despite the MIC investigation and resulting Consent Order to address USAA's Maryland Insurance Article violations, USAA failed to fully compensate the members who had been improperly charged late fees.  USAA refunded the members the amount paid in late fees, but wrongfully withheld the accrued interest and increased time value of the monies.

9.      Plaintiff, on behalf of the Class he seeks to represent, brings this lawsuit based on USAA's unlawful actions and practices for (i) money had and received, (ii) breach of contract, and (iii) unjust enrichment. Through its unlawful practices, USAA improperly charged the putative Class of more than 131,000 current and former members late fees and in doing so unlawfully obtained millions of dollars from those members. Upon discovery of the unlawful action, USAA failed to fully compensate the members for their damages as a result of its unlawful actions, specifically the interest accrued on the monies unlawfully held by USAA. Accordingly, this lawsuit seeks, *inter alia*, certification as a class, compensatory and consequential damages, and/or full restitution.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action based on diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 putative Class Members, the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interests and costs, and at least one Class Member is a citizen of a different state than Defendants.

11.      This Court has personal jurisdiction over Defendants because (i) Defendants regularly conduct business or solicit business, engage in other persistent course of conduct and/or derive substantial revenue from products and/or services provided to individuals in the District and in this State and (ii) Defendants have purposefully established substantial, systematic, and continuous contacts with this District and expect or reasonably should expect to be hauled into court here.  Thus, Defendants have sufficient minimum contacts with this District, and this Court's exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.  Exercise of jurisdiction by this Court is just and proper because Defendants,

4

1743331-1

through their business operations, intentionally availed themselves of the markets within this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants regularly do business in this District and are subject to personal jurisdiction in this District.


**PARTIES**

**A.  Plaintiff**

13.     Plaintiff Walter Black III ("Plaintiff") is a natural person and a citizen of the State of Maryland and a resident of Prince George's County.

14.     Plaintiff obtained a USAA automobile insurance policy through USAA in 1978 and continues to be a policyholder.  His automobile insurance policy is currently underwritten by Defendant USAA Casualty Insurance Company.

15.     USAA improperly charged late fees to Plaintiff on August 5, 2013; September 5, 2013; and March 5, 2014.

16.     Plaintiff received a statement dated March 27, 2020 that indicated thirty dollars ($30.00) had been credited to his account.  The credits were labeled "LATE FEE REVERSED." The statement failed to provide any information as to the reason for reversal.

**B.  USAA Defendants**

17.     Defendant United Services Automobile Association, a self-described "diversified financial services group of companies,"[1] and its subsidiaries Defendants USAA General Indemnity

---

[1] https://www.usaa.com/inet/wc/ newsroom_factsheets_main?akredirect=true

1743331-1

Company, Garrison Property and Casualty Insurance Company, and USAA Casualty Insurance Company are hereafter collectively referred to as "USAA."

    a.   **United Services Automobile Association (parent)** is a reciprocal interinsurance exchange with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. United Services Automobile Association has been authorized to issue insurance policies in Maryland since July 1, 1954 and continues to be so authorized. Individuals submit an application for insurance to United Services Automobile Association and the company determines whether to accept the risk and, if so, which of the Defendants will underwrite the policy.

    b.   **USAA General Indemnity Company (subsidiary)** is an insurance company with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. USAA General Indemnity Company has been authorized to issue insurance policies in Maryland since November 6, 1987 and continues to be so authorized. USAA General Indemnity Company is a subsidiary company of United Services Automobile Association and underwrites insurance policies on United Services Automobile Association's behalf.

    c.   **Garrison Property and Casualty Insurance Company (subsidiary)** is an insurance company with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. Garrison Property and Casualty Insurance Company has been authorized to issue insurance policies in Maryland since May 24, 1918 and continues to be so authorized. Garrison Property and Casualty Insurance Company is a subsidiary company of United Services Automobile

6

Association and underwrites insurance policies on United Services Automobile Association's behalf.

      d.   **USAA Casualty Insurance Company (subsidiary)** is an insurance company with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. USAA Casualty Insurance Company has been authorized to issue insurance policies in Maryland since August 11, 1980 and continues to be so authorized. USAA Casualty Insurance Company is a subsidiary company of United Services Automobile Association and underwrites insurance policies on United Services Automobile Association's behalf.

18.     USAA provides insurance and other financial services to its individual "members." Membership is restricted to individuals currently serving in any branch of the armed forces, members of the National Guard, individuals serving in the Reserves, veterans who were not dishonorably discharged, spouses and children of the above individuals, and precommissioned officers. Non-members are ineligible to obtain policies, although in special circumstances they can hold USAA policies briefly.

19.     USAA heavily advertises its dedication and commitment to serving individuals in the United States Military with integrity.

<u>**FACTS**</u>

**A.    The Maryland Insurance Article applies to USAA Policies insuring Maryland Risks.**

20.     At all relevant times, Defendants were authorized to operate as insurers in the state of Maryland. Maryland Insurance Article § 1-201 provides that "a person that engages in or transacts insurance business in the State, or performs an act relative to a subject of insurance

7

resident, located, or to be performed in the State, shall comply with each applicable provision of this article."

21.    USAA sells policies to individuals who they define as "members."

22.    To become a member, all an eligible individual must do is purchase a USAA insurance policy.

23.    Maryland Insurance Article § 27-216(b)(3)(i) "does not prohibit an authorized insurer from charging and collecting, *if approved by the Commissioner* … reasonable fees for late payment of premiums by policyholders." (emphasis added).

24.    In order for an insurance company to charge late fees, "[t]he Commissioner shall review administrative expenses submitted by an authorized insurer that are associated with late payments … and may approve a late fee … *not to exceed $10*."  Maryland Insurance Article § 27-216(b)(3)(ii) (emphasis added).

**B.    USAA Violated the Maryland Insurance Article by Charging Impermissible Late Fees.**

25.    Prior to June 27, 2011, Defendants filed billing plans with the MIC that included and allowed them to charge a $10 late fee when members failed to make the required timely payments under those billing plans.

26.    On June 27, 2011 Defendants filed a new billing plan with the MIC that withdrew the previous filing.  The new filing did not provide Defendants with authority to charge or collect late fees.  The new billing plan took effect on August 27, 2011.

27.    Because the most recent billing plan filed with the MIC did not provide for collection of late fees, USAA was not legally allowed to collect a late fee of any amount from individuals insuring Maryland risks pursuant to Maryland Insurance Article § 27-216(b)(3).

8

28.    USAA was in violation of at least one provision of the Maryland Insurance Article at all times from August 27, 2011 through September 30, 2019.  USAA's initial attempts to prevent the violations from occurring simply led to new violations.

29.    USAA violated the Maryland Insurance Article § 27-216(b)(3)(i) from August 27, 2011 until August 24, 2018 by charging and collecting late fees from thousands of its members without MIC authorization.

30.    In 2018, a USAA member filed a consumer complaint with the MIC regarding her policy termination.  In response, the MIC opened a market conduct action (MCPC-1-2019-I) into Defendants' activities relating to their reported violation of Maryland Insurance Article § 27-216.  The market conduct action led to a comprehensive investigation into Defendants' compliance with the Maryland Insurance Article.

31.    This investigation findings included the discovery that Defendants' filings neither sought nor received authorization for continued collection of late fees and therefore, USAA had been collecting late fees from thousands of its insureds improperly and against Maryland law since August 2011.

32.    As a result of this discovery, on August 24, 2018 Defendants stopped charging late fees to members if they had a Maryland mailing address.

33.    From August 24, 2018 to January 23, 2019, Defendants continued, however, to unlawfully collect late fees from members who insured only risks in Maryland but used an out-of-state mailing address in violation of § 27-216(b)(3)(i) of the Maryland Insurance Article.  When this violation was discovered, USAA discontinued the billing practice, effective with bills issued on January 23, 2019.

34.    When USAA revised its billing protocols on January 23, 2019, it failed again to correct all of its violations.  From January 23, 2019 to September 30, 2019, Defendants collected late fees greater than the $10 permitted under § 27-216(b)(3)(ii)(2) of the Maryland Insurance Article from members with policies insuring only risks in Maryland but with out-of-state billing addresses.

**C.    USAA Enters into a Consent Order with the Maryland Insurance Commissioner.**

35.    In July 2020, Defendants entered into a Consent Order with the MIC.  According to the Consent Order, the MIC "concluded that, during the period of August 27, 2011 to January 23, 2019, [Defendants] violated § 27-216(b)(3)(i) of the Insurance Article."  When USAA revised its billing practices to correct the violation, it created new violations.  The Consent Order stated that "since January 23, 2019, [Defendants] violated § 27-216(b)(3)(i) and § 27-216(b)(3)(ii)(2) of the Insurance Article by imposing a late fee greater than $10.00 on policyholders who only had a policy or policies insuring Maryland risks, but using an out-of-state mailing address as the billing address for the policy or policies."

36.    According to the Consent Order, Defendants paid "restitution" to the Members from whom Defendants had collected late fees unlawfully.

37.    The MIC also required Defendants to pay a sixty-seven-thousand-five-hundred dollar ($67,500) administrative penalty to the MIC.

38.    The MIC further required Defendants to provide an accounting of all late fees over ten dollars ($10) that had already been charged and refunded, implement a new billing system to prevent such late fees from being collected in the future, and provide an accounting of all such late fees that were charged and refunded from the date of the Consent Order until such time as the new billing system was implemented.

10

**D.**    **USAA Failed to Pay Any Accrued Interest on Unlawful Late Fees to its Members.**

39.    Members with active USAA accounts were issued a refund via USAA's usual billing practices.  On the billing statements issued by Defendants to its members on or around March 20, 2020, Defendants provided a credit for late fees charged since August 27, 2011.  The credit on the statement stated "LATE FEE REVERSED."  No explanation was provided to members who had active policies with Defendants at the time the credit was issued.

40.    Defendants reported to the MIC that a note was added to the file of each member who received a credit in the event that a member inquired.  The note reportedly instructed USAA employees to tell inquiring members:

> We recently conducted a review of Maryland policies and determined that between June 2011 and January 2019, some late fees were charged in error.  If the member paid any such fees, and still has an account with us, a credit will be applied to their account balance.  If they do not have an account balance, a check will be sent to the member.

41.    Even had USAA representatives provided the scripted notice to members, it did not provide members with any details regarding USAA's violations or the circumstances of the refund.  USAA's actions prevented, and continue to prevent, USAA members from knowing they are owed monies.

42.    Former members with closed accounts who had been charged unlawful late fees between August 27, 2011 and January 23, 2019 were issued a check for the amount of the late fees charged.  The check came with a notice stating:

> We recently conducted a review of Maryland policies and determined that between June 2011 and January 2019, some late fees were charged in error.  Please find attached a check with the amount of those late fees reversed.  Please note the Maryland Insurance Administration is aware of this issue.

11

1743331-1

43.    Former members with closed accounts to whom USAA determined it owed less than one dollar were not provided any notice or refund.  This failure deprived those individuals of the ability to independently verify USAA's determination.

44.    None of the payments issued by Defendants included interest that the Defendants unjustly gained as a result of unlawfully taking money from the putative Class Members and holding it for up to nine years.

45.    Defendants collected unlawful late fees from their members and used that money in any way they deemed fit for nearly nine years.  Defendants made additional money by using Plaintiff's and putative Class Members' money, including by generating additional revenue.

46.    Because Defendants were wrongfully holding the money, Plaintiff and putative Class Members did not have use of their money.  Plaintiff and putative Class Members were unable to earn interest on the money and/or increase its value through investment.  They were unable to use that money to pay other bills, such as but not limited to high-interest credit cards, loans, and/or utilities.  Defendants prevented Plaintiff and putative Class Members from increasing the value of their money and decreased their ability to pay debts.

47.    When USAA collected the unlawful late fees, Plaintiff and putative Class Members lost more than the value of the late fee.  For example, they lost the interest they needed to pay on credit card debt or other bills and the increased value they would have obtained by investing the money.

48.    USAA was able to reinvest the late fees into its businesses and generate increased revenue.  Such corporate growth inherently builds on itself, increasing the value to USAA exponentially.

## **CLASS ACTION ALLEGATIONS**

49.     Plaintiff brings this lawsuit as a class action, pursuant to Federal Rules of Civil Procedure 23(a) and 23 (b)(1)-(3), on behalf of himself and all others similarly situated as members of the proposed Class.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

50.     The Class is defined as:

> All individuals who, per the Consent Order of the Insurance Commissioner of the state of Maryland dated July 30, 2020 in Case No. MIC-2020-08-002, were ordered refunds of late fees charged by Defendants between August 27, 2011 and September 30, 2019 and were not paid interest on such late fee refunds.

51.     Subject to additional information obtained through further investigation and discovery, the foregoing Class may be expanded or narrowed by amendment or amended complaint.

52.     Specifically excluded from the Class are Defendants and any of their respective officers, directors, legal representatives, employees, successors, subsidiaries, and assigns.  Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff, and persons who timely and properly exclude themselves from the Class.  Any entity in which one or more Defendant had a controlling interest or which had a controlling interest in one or more Defendant is also excluded from the Class.

53.     **Numerosity:** The members of the class are so numerous such that joinder is impracticable.   Plaintiffs believe there are approximately one-hundred-thirty-one-thousand (131,000) Class Members whom USAA identified as being improperly charged late fees geographically dispersed through the state of Maryland or insuring risk in Maryland.  The exact number is unknown to Plaintiffs at this time and can only be confirmed from information and records in the possession, custody, or control of Defendants.

1743331-1

54.     **Commonality and Predominance**: There are numerous questions of law and fact common to the putative Class Members that predominate over any questions affecting only individual members of the Classes. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants unlawfully and improperly withheld accrued interest on unlawfully assessed late fees owed to Plaintiff and putative Class Members is accurate, Plaintiff and putative Class Members will have identical claims capable of being efficiently adjudicated and administered in this case. Among the common questions of law and fact are:

A.     Whether Defendants unlawfully withheld interest on late fees that they assessed in violation of the Maryland Insurance Article;

B.     Whether, by withholding interest on unlawfully assessed late fees, Defendants breached their insurance policy contracts with Plaintiff and the putative Class Members;

C.     Whether Defendants were unjustly enriched by their improper conduct;

D.     Whether Defendants withheld information from members related to the violation, preventing putative Class Members from being aware they are owed money;

E.     Whether Defendants refunded Plaintiff and members of the putative Class the interest accrued on unlawfully collected late fees; and

F.     Whether the Defendants are liable for compensatory and/or consequential damages and/or restitution and the amount of such damages and/or restitution.

55.     **Typicality**: Plaintiff's claims are typical of the claims of putative Class Members, as they are all based on the same factual and legal theories. The claims of Plaintiff and putative Class Members are all premised on USAA refunding the amount of money collected in late fees rather than the value the money provided to USAA over the time it improperly held the money, including improperly withheld interest. USAA wrongfully collected late fees from the Plaintiff

and then refunded an inadequate sum, thereby profiting from the wrong it committed against Plaintiff. Similarly, USAA wrongfully collected late fees from the putative Class Members and then refunded an inadequate sum, thereby profiting from the wrong it committed against the putative Class Members. Both Plaintiff and putative Class Members lost the increasing value of their money over time as a direct result of USAA's uniform wrongful conduct.

56.    **Adequacy**: Plaintiff wilfully and adequately asserts and protects the interests of the putative Class, and has retained competent counsel. Plaintiff has obtained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Classes and have the financial resources to do so. Plaintiff has no interests antagonistic to those of the putative Class, and there are no defenses unique to Plaintiff. Neither Plaintiff nor his counsel have any interests adverse to those of the other putative Class Members.

57.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all putative Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the putative Class are in the millions of dollars, individual damages incurred by each putative Class Member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual putative Class Members prosecuting their own separate claims is remote, and even if every putative Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58.    **Risks of Prosecuting Separate Actions**: The prosecution of separate actions by putative Class Members would create a risk of establishing inconsistent rulings and/or

incompatible standards of conduct for Defendants.  For example, one court may determine damages should be calculated based on an average credit card rate, while another may determine damages should be based on an average investment rate.  Additionally, individual actions may be dispositive of the interests of the putative Class as a whole, although certain putative Class Members are not parties to such actions.

59.    **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Plaintiff and the proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.  Defendants' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiff's challenge to those practices hinges on Defendants' conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiffs.

### CAUSES OF ACTION

### COUNT I
**MONEY HAD AND RECEIVED**
**(On behalf of Plaintiff and Class as a whole)**

60.    Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

61.    As set forth above, and actually determined by the Maryland Insurance Commissioner, Defendants collected late fees in violation of §§ 27-216(b)(3)(i) and (b)(3)(ii)(2) of the Maryland Insurance Article, including late fees in amounts exceeding the rates that Defendants had filed with the Maryland Insurance Commissioner.

62.    From August 27, 2011 to January 23, 2019, Defendants improperly assessed unapproved late fees to Plaintiff and putative Class Members in violation of § 27-216(b)(3)(i) of

the Insurance Article, which provides that late fees "must be approved by the insurance commissioner."

63.     From January 23, 2019 through September 30, 2019, Defendants also improperly assessed late fees in excess of $10 to putative Class Members in violation of §§ 27-216(b)(3)(i) and (b)(3)(ii)(2) of the Maryland Insurance Article, which provides that late fees approved by the Maryland Insurance Commissioner must not exceed $10.

64.     Upon concluding that Defendants violated multiple provisions of the Maryland Insurance Article, the MIC ordered refunds of the unlawful late fees.

65.     Due to these Insurance Article violations, Defendants received the benefit of the withheld accrued interest on unlawful late fees from Plaintiff and putative Class Members to which it had no right at law or in equity.

66.     Defendants had access to all the interest accruing on the unlawful late fees and/or investment income from those monies.  While Defendants were continuing to profit by using Plaintiff's and putative Class Members' monies, Plaintiff and putative Class Members were denied access to their monies, which prevented them from earning interest and/or investing those sums.

67.     Defendants have failed to refund the interest accrued on the monies it unlawfully collected from Plaintiff and putative Class Members.

68.     It would be inequitable for Defendants to retain any such interest on monies to which it had no right at law or in equity.

## COUNT II
## BREACH OF CONTRACT
**(On behalf of Plaintiff and Class as a whole)**

69.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 59 as if fully set forth herein.

17

70.     The policies issued by Defendants to the Plaintiff and putative Class Members form the sole contract between the parties.

71.     At all relevant times, including when the policies were purchased and contracts were formed, the Maryland Insurance Article stated in pertinent part:

> (i) …. this subsection does not prohibit an insurer from charging and collecting, if approved by the Commissioner, reasonable installment fees or reasonable fees for late payment of premiums by policyholders or both.
>
> (ii) The Commissioner:
>
>     2. may approve a late fee or installment fee not to exceed $10.
>
> MD. INS. ART. § 27-216(3)

72.     As the law governing insurance policies, the statutory requirements are and were subsumed into the policy as if expressly referred to or incorporated.

73.     The contract between USAA and its members incorporates this statutory language: "[i]f any of the terms of this policy conflict with state or local law, state or local law will apply." Thus, these statutory requirements were incorporated into the contract both by operation of law and the terms of the contract itself.

74.     Defendants breached their contract with Plaintiff and putative Class Members by collecting late fees in violation of the Maryland Insurance Article and by failing to meet its contractual obligation to comply with said law.

75.     Defendants had a contractual obligation to exercise good faith and fair dealing in its implementation of the contract.  Defendants collected impermissible fees under the contract. Further, Defendants "corrected" this error by refunding its members the precise dollar amount paid

18

by the member, even if that fee had been paid in 2011, while aware they should have also provided the increased value.

76.     Defendants engage in a variety of financial operations that involve lending individuals money for a period of time.  All USAA products require those individuals to pay back the money with interest.  Defendants consistently demonstrate an awareness of the time value of money, but chose to ignore that knowledge when they refunded their members' monies.

77.     Defendants breached their contractual duty of good faith and fair dealing when they decided in bad faith to refund Plaintiff and putative Class members only a portion of the monies owed to them.

78.     Defendants' breach resulted in Defendants taking monies from Plaintiff and putative Class Members without cause and keeping those monies for an extended period of time. In addition to losing the actual value of said monies at time of payment, Plaintiff and putative Class Members also lost the ability to earn interest and/or investment income on the monies.  This interest and/or investment income would have compounded over the years USAA withheld the funds.

79.     Defendants have not compensated Plaintiff and Class Members for the harm caused by lost interest and/or investment income.

80.     The policy, which serves as the sole contract between Defendants and Plaintiff and putative Class Members, does not provide for the calculation of damages in the event Defendants breach the contract.

81.     Defendants informed the MIC that they collected around eight-million-one-hundred-sixty-three-thousand-nine-hundred-sixty-nine dollars ($8,163,969) in unlawful late fees starting on August 27, 2011 and ending September 30, 2019.  Defendants had use of the money to

invest and earn interest from the time it was collected. Defendants earned substantial income from the monies it unlawfully collected from Plaintiff and putative Class Members. If Defendants collected and invested that money at a steady rate since August 27, 2011, the current value would be over fifteen million dollars ($15,000,000).[2]

82.     Justice requires that Defendants provide any benefits they earned including investment and/or interest income to the Plaintiff and putative Class Members.

## COUNT III
## UNJUST ENRICHMENT *In the Alternative*
## (On behalf of Plaintiff and Class as a whole)

83.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 59 as if fully set forth herein.

84.     Plaintiff and putative Class Members have conferred a benefit on the Defendants as a result of Defendants improperly assessing late fees and collecting millions of dollars from Plaintiff and putative Class Members. Defendants refunded Plaintiff and putative Class Members only the dollar amount of the late fees assessed, without accounting for the interest Defendants had earned on the money. As a result of those actions, Defendants were unjustly enriched at the expense of the Plaintiff and putative Class Members.

85.     Plaintiff and putative Class Members' detriment and Defendants' enrichment is the direct result of Defendants' illegal charging and collecting of late fees as described herein and providing a refund that omitted necessary interest.

---

[2] Assuming the $8 million in late fees was collected at a consistent rate from August 27, 2011 through September 30, 2019, USAA collected roughly $85,000 each month. The actual rate of collection can be easily determined. The average return on investment in the stock market for that time was 13.9%. According to the U.S. Securities and Exchange Commission's Compound Interest Calculator (available at www.investor.gov), an $85,000 investment with a monthly contribution of $85,000 that earned 13.9% interest compounded monthly would equal $15,226,622,67.

1743331-1

86.     Defendants have profited from their unlawful, unfair, and illegal practice at the expense of the Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. It would be inequitable for Defendants to retain benefits, interest earned, earned income, and any other benefit obtained as a result of the conduct described herein.  Moreover, Defendants deprived the putative Class Members of the knowledge that USAA owed them money.

87.     Defendants informed the MIC that they collected approximately eight-million-one-hundred-sixty-three-thousand-nine-hundred-sixty-nine dollars ($8,163,969) in unlawful late fees starting on August 27, 2011 and ending on September 30, 2019.  Defendants had use of the money to invest and earn interest from the time it was collected.  Defendants earned substantial income from the monies it unlawfully collected from Plaintiff and putative Class Members.  If Defendants had invested that money at a steady rate since August 27, 2011, the current value would be over fifteen million dollars ($15,000,000).  *See supra,* footnote 2.  The Defendants may have actually used that money in a way far more profitable and been unjustly enriched by an even greater sum.

88.     If Defendants do not provide that increased value to the Plaintiff and putative Class Members from whom they collected the late fees, in proportion to the amount paid, then Defendants have profited from their unlawful actions.

89.     Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment.

90.     Justice requires that Defendants provide that investment and/or interest income to the Plaintiff and putative Class Members.

## **RELIEF REQUESTED**

21

91.    Plaintiff, on behalf of all others similarly situated, request that the Court enter judgment against Defendants that:

      A.    Determines that this matter may proceed as a class action and certifying the Class;

      B.    Appoints Plaintiff as representative of the Class and appoints Plaintiff's counsel as Class counsel;

      C.    Awards Plaintiff and the putative Class Members compensatory and consequential damages, as set forth above;

      D.    Awards full restitution of all funds acquired and subsequently earned from Defendants unlawful collection of late fees, including disgorgement of profits;

      E.    Awards pre-judgement and post-judgment interest, as provided by law or equity; and

      F.    Such other relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 25, 2021              Respectfully submitted,

                                   */s/ Jonathan P. Kagan*

                                   Jonathan P. Kagan, Bar No.: 23181
                                   Heather K. Yeung, Bar No.: 20050
                                   **KAGAN STERN MARINELLO & BEARD LLC**
                                   238 West Street
                                   Annapolis, MD  21401
                                   Phone: (410) 216-7900
                                   Facsimile: (410) 705-0836
                                   Email: kagan@kaganstern.com
                                   Email: yeung@kaganstern.com

Keith T. Vernon*
Andrew W. Knox*
Kathleen M. Vermilion*
**TIMONEY KNOX, LLP**
400 Maryland Drive
Fort Washington, PA  19034
Phone: (215) 646-6000
Facsimile: (215) 591-8246
Email: kvernon@timoneyknox.com
Email: aknox@timoneyknox.com
Email: kvermilion@timoneyknox.com

Andrea R. Gold
Mallory Morales*
**TYCKO & ZAVAREEI, LLP**
1828 L Street, NW
Suite 1000
Washington, D.C.  20036
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: agold@tzlegal.com
Email: mmorales@tzlegal.com

Jonathan Shub*
Kevin Laukatis*
**SHUB LAW FIRM, LLC**
134 Kings Highway East, 2nd Floor
Haddonfield, NJ  08033
Tel: (610) 453-6551
Email: jshub@shublawyers.com
Email: klaukaitis@shublawyers.com

Karen M. Kohn
**THE KOHN LAW GROUP, PLLC**
1717 K Street, NW, Suite 900
Washington, D.C.  20006
Phone: (202) 465-8686
Facsimile: (202) 871-7394
Email: karen@thekohnlawgroup.com

*Pro Hac Vice Application to be submitted*

*Attorneys for Plaintiff and the Putative Class*

23