## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WALTER BLACK, III** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 8:21-01581-PJM |
| | * | |
| **USAA GENERAL INDEMNITY** | * | |
| **COMPANY,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

## OPINION

### I.   INTRODUCTION

This is a putative class action brought by Walter Black against United Services Automobile Association ("USAA") and its subsidiaries: Garrison Property and Casualty Insurance Company ("Garrison"); USAA General Indemnity Company ("USAA GIC"); and USAA Casualty Insurance Company ("USAA CIC").[1]

As of 1978 and since then, Black has had an automobile insurance policy with USAA underwritten by USAA CIC. Between August 2013 and March 2014, USAA charged Black three ten-dollar late charge fees for untimely payment of his monthly premiums.

As it turned out, however, USAA lacked authority to charge the late fees because it had not, as required by State insurance administration regulations,[2] received approval to do so from the Maryland Insurance Administration ("MIA") and the Maryland Insurance Commissioner ("MIC"). Accordingly, following an investigation by the MIC in July 2020, USAA entered into a

---

[1] USAA, Garrison, USAA GIA, and USAA CIC are hereafter referred to collectively as "Defendants."

[2] Maryland Insurance Article § 27-216(b)(3) "does not prohibit an authorized insurer from charging and collecting, if approved by the Commissioner . . . reasonable fees for late payment of premiums by policyholders."

Consent Order agreeing to reimburse its approximately 130,000 policy holders a total in excess of $8.1 million for inappropriately assessed late charges. Black, as one of the policy holders, received a credit to his account in the amount of thirty dollars, representing the three late charges that had been assessed to him. What Black did <u>not</u> receive (nor apparently did any other policy holder receive), was the interest Defendants had earned over the years on the wrongly assessed late charges. That is what Black seeks in this suit on behalf of himself and others similarly situated — the interest on the improperly retained late charges, estimated to be in excess of seven million dollars.

## II.   THE PARTIES' CLAIMS AND DEFENSES

Black's suit proceeds in three counts: Count I — Money Had and Received; Count II — Breach of Contract; and Count III — Unjust Enrichment.

Defendants, in their Amended Motion to Dismiss, argue: (1) Lack of Subject Matter Jurisdiction; Exclusive Jurisdiction in the Maryland Insurance Administration ("MIA"); (2) Failure to State a Claim; and (3) Statute of Limitations.

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) will be granted where the court lacks subject-matter jurisdiction over the claims alleged in the complaint. Federal courts are courts of limited jurisdiction: they "possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). As the party asserting jurisdiction, the plaintiff bears the burden of proving that the district court has subject-matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

2

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, where a plaintiff's complaint fails to state a claim upon which relief can be granted, courts routinely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, "leave to amend should be denied only when . . . amendment would be prejudicial to the opposing party, there has been bad faith on the part of the [party seeking to amend], or amendment would be futile." *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

A party is permitted to use a 12(b)(6) motion to dismiss as a vehicle to challenge a complaint on statute of limitations grounds.

## IV.   PLAINTIFF'S FIRST CAUSE OF ACTION: MONEY HAD AND RECEIVED

In *Bourgeois v. Live Nation Entertainment, Inc.*, 3 F. Supp. 3d 423 (D. Md. 2014), Judge Hollander of this Court had occasion to address the cause of action for "Money Had and Received" in Maryland:

> In *Bourgeois* [*v. Live Nation Entertainment, Inc.*, 430 Md. 14 (2013)], the Maryland Court of Appeals explained: "An action for money had and received is one of what have been referred to as the 'common counts' or 'common money counts' that developed under English common law as a branch of the common law writ of assumpsit—*indebitatus assumpsit*." A count for money had and received "'lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain.'" *Benson v. State*, 389 Md. 615, 652–53, 887 A.2d 525, 547 (2005) (quoting *State, Use of Employment Sec. Bd. v. Rucker*, 211 Md. 153, 126 A.2d 846 (1956)).
>
> The *Bourgeois* Court observed that "the common counts are rarely pled any more," 430 Md. at 46, 59 A.3d at 527, although the court "has never repealed or repudiated them" and has continued to "recognize[] the viability of an action for money had and received." *Id.* at 46, 59 A.3d at 527–28. Indeed, the court said: "An action for money had and received is a well-established remedy with a long history in this State, and, so long as it continues to have any usefulness, we see no reason to abrogate it." *Id.* at 46, 49 A.3d at 528.

3

Citing *Poe's Pleading and Practice ("Poe's")*, 6th (Sachs) ed. §§ 119–26 (1970),[]
the *Bourgeois* Court explained that the common law claim for "money had and
received" has several branches. *Bourgeois*, 430 Md. at 47–48, 59 A.3d at 528–29.
The court outlined several of those branches, noting that the action may lie to
recover money paid "upon a mistake of fact"; "to recover money obtained by fraud
or false pretenses"; to obtain money "paid upon an unexecuted illegal contract"; or,
"in certain circumstances," to recover money "paid under an executed illegal
contract." *Id.*

*Bourgeois*, 3 F. Supp. 3d at 437.

In the present case, Black's claim appears to rely on the prong of payment paid under

mistake of fact. *Poe*, §§ 119–26. Allegedly, he (and others), without full knowledge of the facts,

paid the late charges to Defendants on the mistaken belief that they were obligated to do so.

While under the "old" common counts it might have sufficed to simply plead that Plaintiff

sues Defendant for Money Had and Received, *id.* § 24, today a statement of facts setting forth in

reasonable detail the basis of the claim is obviously required.

## V.      PLAINTIFF'S SECOND CAUSE OF ACTION: BREACH OF CONTRACT

Plaintiff's second cause of action is for Breach of Contract. The elements of a breach of

contract claim in Maryland are: (1) the existence of a contractual obligation, (2) the breach of a

stated obligation, and (3) damages resulting from the breach. *See Tucker v. Specialized Loan

Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015). Motions to dismiss have been granted

when the plaintiff's complaint is insufficiently vague or merely alleges an "implied obligation,"

rather than an express obligation under the contract. *Cont'l Masonry Co. v. Verdel Constr. Co.*,

369 A.2d 566, 567 (1977); *see also Dern v. Liberty Mutual Ins. Co.*, No. GJH-15-1737, 2015 WL

8665329, at *4 (D. Md. Dec. 11, 2015).

Black argues here that the insurance contract between USAA and its members incorporates

statutory language to the effect that: "[i]f any of the terms of this policy conflict with state or local

4

law, state or local law will apply." Compl. ¶¶ 73, 74. From best the Court can tell, Black may be harking back to the insurance regulations that Defendants concededly did not comply with. Otherwise, it is not clear what laws Black has in mind. It may well be, however, that Black is attempting to articulate a claim in quasi-contract, which is essentially tantamount to a cause of action for money had and received or unjust enrichment. That is something that will be addressed when the Court discusses Defendants' arguments in support of their Amended Motion to Dismiss.

## VI.    PLAINTIFF'S THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

Paul Mark Sandler, *et al.*, in PLEADING CAUSES OF ACTION IN MARYLAND, have this to say about the cause of action for Unjust Enrichment in Maryland:

> In the words of the Court of Special Appeals, "[u]njust enrichment is notoriously difficult to define." *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Restaurants*, 243 Md. App. 62, 69, 219 A.3d 99, 103 (2019) (citation omitted). Generally speaking, it "occurs when the plaintiff confers a benefit on the defendant, the benefit is known to the defendant, and retention of that benefit by the defendant under those circumstances is inequitable." *Chassels v. Krepps*, 235 Md. App. 1, 18, 174 A.3d 896, 905–06 (2017). A claim for unjust enrichment concerns an implied-in-law contract, or quasi-contract—in other words, "not a contract at all, but a legal fiction." *Clark Off. Bldg., LLC v. MCM Cap. Partners, LLLP*, 249 Md. App. 307, 314, 245 A.3d 186, 1990 (2021) (citing *City Commm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc., "Dashiell,"* 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Indeed, there is no contract, but "circumstances are such that justice warrants a recovery as though there had been a promise." *Id.* Interestingly, "[t]he measure of damages for unjust enrichment is the gain to the defendant not the loss to the plaintiff." *Clark Off. Bldg., LLC v. MCM Cap. Partners, LLLP*, 249 Md. App. 307, 315, 245 A.3d 186, 191 (2021).
>
> To sustain a claim based upon unjust enrichment, the plaintiff must establish:
>     1) A benefit conferred upon the defendant by the plaintiff;
>     2) Appreciation or knowledge by the defendant of the benefit; and
>     3) Acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value or the return of money, if money is improperly withheld.

219–20 (7th ed. 2022) (citing numerous cases).

Here Black postulates that Defendants had the use of improperly assessed late charges, and benefitted from the interest that accrued on those sums; that Defendants were at all times well-aware that they enjoyed the time-value of the late charge money (again, estimated to be in excess of seven million dollars); and that Defendants accepted and retained the benefit of the interest on the money under circumstances that would make it inequitable for them to do so without repayment of those moneys to the policy-holders.

## VII.   DEFENDANTS' FIRST ARGUMENT: LACK OF SUBJECT MATTER JURISDICTION; EXLUSIVE JUURISDICTION OF THE MIA

In their initial Motion to Dismiss (ECF No. 39) Defendants argued, *inter alia*, that Black had failed to exhaust his administrative remedies, asserting that only the MIA, not the courts, can decide the issue of whether interest on unapproved late charges should be assessed and that that matter, at a minimum, must be pursued through an administrative action before the MIA.

Without necessarily embracing Defendants' argument, in order to close the circle, the Court, by Letter Order dated October 19, 2022, denied Defendants' initial Motion to Dismiss without prejudice and administratively closed the case so that Black might exhaust whatever administrative remedies might have been appropriate for him to pursue. ECF No. 47.

In accordance with the Letter Order issued by this Court, Black filed a complaint with the MIA.

According to the MIA, before Black entered the fray, it had apparently considered the possibility of ordering interest on the late charges to be added to the accumulated late charges that would be part of the Consent Decree. But after the MIA deliberated over the appropriate amount of restitution Defendants should be required to remit to its policyholders, in the Consent Order of July 2020 the MIA declined to include interest as part of the remittance. Reviewing Black's complaint after the Court directed him there, the MIA noted that the MIC's determination in the

6

Consent Order was final, signaling in effect that, insofar as relevant and appropriate, Black had administratively exhausted his remedies with the MIA.

With the case subsequently re-opened in this Court, Defendants now claim that Black is collaterally attacking the MIA's statutory authority by seeking independent judicial relief and, in effect, should be nonsuited.

But as the Court sees it, the question has been transformed. It is no longer a question of whether the MIA should have the first say on the question of whether interest on the late charges should be assessed. MIA has already been given the first say. It is now a question of whether the MIA has exclusive jurisdiction over the matter of interest on the late charges such that the Court is restricted in its review. If the agency's jurisdiction indeed is exclusive as Defendants contend, that may be the end of the inquiry. But if the agency's jurisdiction is merely primary, the issue may still be pursued in Court after exhaustion of the administrative remedy.

There appears to have been some confusion in the way this issue has been argued by the parties. A number of cases actually discuss the issue of exclusive jurisdiction in contradistinction to primary jurisdiction. *See e.g.*, *Mardirossian v. Paul Revere Life Ins. Co.*, 286 F.3d 733, 735 (4th Cir. 2002); *Carter v. Huntington Title & Escrow, LLC*, 24 A.3d 722, 728–29 (Md. 2011). But this only means that some issues have to be decided administratively before they can be pursued judicially. They do not stand for the proposition that only the administrative agency, not the courts can consider an issue.

Ordinarily, an administrative remedy "will be treated as exclusive only when the Legislature has indicated that the administrative remedy is [meant to be] exclusive or when there [is no] alternative statutory, common law, or equitable cause of action." *Zappone v. Liberty Life*

*Ins. Co.*, 706 A.2d 1060, 1068 (Md. 1998). There is no presumption that the administrative remedy was intended to be exclusive. *Id.* at 1069.

In the present case, there is absolutely no indication that the Maryland Legislature ever intended the MIA to have exclusive jurisdiction over the specific issue of entitlement to interest on late charges improperly retained, even if they were retained in good faith and without fraud or malice. This is, if nothing else, a classic instance of money had and received based on mistake of fact, a separate cause or causes of action in this case that will be discussed presently. Nor is there any indication that the MIA itself has ever viewed its own jurisdiction in the matter as exclusive or that the comprehensive statutory scheme of Maryland's Insurance Code somehow leads to the conclusion that the administrative remedy is exclusive. In sum, the decision of the MIA not to order interest on the retained late charges by Defendants is not in any way exclusive and, as will be suggested *infra*, the various counts of the Complaint may go forward in this Court.

But the critical point to note on the matter of exclusivity is that ultimately it does not matter whether Black's claim is that the unremitted interest on the late charges was somehow tied to Defendants' failure to conform to an insurance regulation. If someone (*e.g.*, Defendants) admits, for whatever reason, that for years he has been holding funds he should not have come into possession of, there are unquestionably alternative independent causes of action at law or equity that may be pursued, *i.e.*, for money had and received or unjust enrichment, by means of which the full value of the improperly retained funds can be retrieved. This is so precisely because the administrative remedy, not being exclusive, is not in any way binding on the courts.[3]

---

[3] Defendants have suggested that Black should be faulted for not taking an appeal to the Maryland appellate courts from the decision of the MIA not to order interest on the late charges. But the issue of the exclusivity of the MIA's authority so as to preclude common law actions in court was never part of MIA's late charge investigation and therefore would not have been part of any appeal to a circuit court. In other words, any appeal of the issue to the State appellate courts would have been "futile," an exception to

8

## VIII.   DEFENDANTS' SECOND ARGUMENT: FAILURE TO STATE A CLAIM

### A.   Money Had and Received and Unjust Enrichment

Defendants next argue that Black's claims for Money Had and Received and Unjust Enrichment are subsumed in his Breach of Contract claim and go on to say that he has no Breach of Contract claim, a point the Court will discuss momentarily.

This is a curious argument. A party can always plead causes of action in the alternative. Fed. R. Civ. P. 8(d)(2)–(3); *see also e.g.*, *Smith v. Toyota Motor Credit Corp.*, No. WDQ-12-2029, 2013 WL 1325460, at *7 n.14 (D. Md. Mar. 28, 2013). What a party may be precluded from doing is recovering on certain causes of action on a cumulative basis. Clearly, Black (and his class, if, certified) would only be entitled to one recovery in this case, not two or three.

Defendants further argue that Black has failed to plead facts that Defendants "knew of or appreciated any benefit allegedly conferred [on] Plaintiff" and that it would be "inequitable" for Defendants not to pay interest on disputed late fees. ECF No. 59-1 at 30. This argument cannot be taken seriously. The pleaded facts clearly suggest that Defendants knew full well that they had the use of the late fees, and, that most certainly they understood the time-value of the fees, which is to say the interest-bearing potential of the fees. Beyond that, Defendants have pointed to no reason, equitable or otherwise, why they should still be able to keep the fruits of the improperly retained fees.

### B.   Breach of Contract

Defendants argue that Black's Breach of Contract claim fails because he has not identified any contractual obligation they might have breached, much less has he done so with the requisite certainty and definitiveness.

---

the requirement of exhaustion. *See e.g.*, *Carey v. United of Omaha Life Ins. Co.*, 633 Fed. App'x 478, 478 (9th Cir. 2016).

Black appears to rely on language in the insurance policy to the effect that "[I]f any of the terms of the policy conflict with state or local law, state or local law will apply." Compl. ¶¶ 73, 74. As suggested earlier, it is not clear where Plaintiff intends to go with this argument, except perhaps to assert that keeping the interest on erroneously retained funds of another somehow violates Maryland law (apart from giving rise to common law claims for its return). This argument is essentially tautological and adds nothing to the analysis.

But while that may be true insofar as Black's breach of contract claim is concerned, at oral argument, in response to a question from the Court, defense counsel conceded a very significant point. When the Court asked counsel: Apart from approval by the MIA to permit an insurer to assess a late charge, is there a provision in the insurance policy itself that authorizes the insurer to do so? *See* ECF No. 73 at 24:15–25:16, 32:8–24. Defense counsel at first responded: "Late fees are charged around the country because of the fact of administrative cost of not paying in time," *id.* at 24:15–25:16, saying essentially, "everyone does it." The Court followed up: That may be so. But based on what authority does everyone do it? And counsel's answer was: There is no provision in the policy authorizing late fees, *see id.* at 23:21–23, 39:16–23, "[i]t's based on the insurance laws allowing that charge." *Id.* at 24:25–25:8. But, as the Court then pointed out, if the insurance laws do not allow for such late fees to be charged unless they approve, the right to assess the charges has to come from somewhere. *Id.* at 25:9.

In the Court's view, the conventional thinking, supported by case law, is that late fees in connection with payment of a sum, any sum, due under any contract may <u>not</u> be charged unless they are provided for in the contract. *See e.g., Gol TV, Inc. v. EchoStar Satellite Corp.*, 692 F.3d 1052, 1056 (10th Cir. 2012); *Williams v. Lendmark Fin. Servs., Inc.*, 828 F.3d 309, 313–14 (4th Cir. 2016). And if that is so, then on what authority could late fees ever have been assessed against

USAA policyholders? Defense counsel surmised that perhaps each time a notice of late fee was sent by the carrier to the policy holder, a new contract was formed, which the policyholder effectively agreed to by paying the late charge. *See* ECF No. 73 at 40:2–7, 41:14–25.

This argument may or may not convince a trier of fact. On the other hand, the concept of adhesion also comes to mind — where the bargaining power of the parties is so unequal as to make enforceability of an "agreement" unenforceable. *Cf., e.g., Shell Oil Co. v. Marinello*, 307 A.2d 598, 601 (N.J. 1973) ("The dealer, particularly if he has been operating the station for a period of years and built up its business and clientele, when the time for renewal of the lease and dealer agreement comes around, cannot afford to risk confrontation with the oil company. He just signs on the dotted line."). In the present case, a long-time policyholder seeking to keep his or her policy in place might after missing the due date for his premium payment well be deemed to have had little choice but to "sign on the dotted line" and pay the late fee.

Still, this view of the case does not really fit the mold of an action for breach of contract. What it does seem to involve is a contract that never came into existence — where the policyholders paid the late charges, thinking they were contractually obliged to do so, when in fact they were not. That feels more like a matter of quasi-contract.

And here the Maryland Appellate Court (formerly the Maryland Court of Special Appeals) in *Clark Office Building LLC v. MCM Capital Partners, LLLP, et al.*, 245 A.3d 186 (Md. 2021) has made some important points:

First, quasi-contract is a "[l]egal fiction . . . invented by common law courts to permit recovery by contractual remedy in cases where there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise." *Id.* at 190 (internal quotations and citations omitted).

11

Second, recovery in quasi-contract typically takes the form of an action for restitution based on unjust enrichment.

Third, the governing rule under Maryland law is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter over which the quasi-contractual claim rests. *Id.* at 191–92.

In other words, as set forth above, Black's claims in Count I for Money Had and Received and Count III for Unjust Enrichment, *i.e.*, both quasi-contractual in nature, already suffice to say cover the case.

But since Black has not clearly stated a claim of breach of contract in Count II of the Complaint, Defendants' Amended Motion to Dismiss will be **GRANTED** as to that Count.

## IX.   DEFENDANTS' THIRD ARGUMENT: STATUTE OF LIMITATIONS

Defendants' final argument in support of dismissal is that Black's claim is time-barred, apparent, they say, from the face of the Complaint. Defendants cite Maryland's three-year statute of limitations, running from the time that the cause or causes of action accrued. Md. Code., Cts. & Jud. Proc. § 5-101. From this, they argue that Black's claims accrued in 2013 and 2014, when he was assessed the late charges, whereas the present suit was not filed until 2021, seven or eight years later. Otherwise, Defendants spend a great deal of time pointing out what Black might have learned over the years since 2013–2014 by scouring the files of the MIA.

Black insists that he filed his claims within the statute of limitations. He claims that Defendants' wrongful acts only accrued in March 2020 when Defendants refunded the improperly collected late fees, but failed to pay the interest earned on the money they improperly retained for years. That would mean Black's suit, initiated some fifteen months thereafter, was timely filed.

More significantly, Black suggests that even if his claim came into being as of the time he was improperly charged, any action on the claims was tolled by reason of the discovery rule, applicable to all civil claims, *i.e.*, that a cause of action accrues only when a plaintiff in fact knows or reasonably should know of the wrong. *See e.g., Georgia-Pacific Corp. v. Benjamin*, 904 A.2d 511, 520–21 (Md. 2006).

Black's argument on the discovery rule clearly carries the day. Essentially until Defendants acted to refund the improperly assessed late charges in 2020, no policyholders would reasonably have known they had a cause of action for restitution of the late fees, much less a cause of action for restitution of the interest earned on the fees. Defendants themselves — if they are to be believed — did not realize until around 2019 or 2020 that assessment of the late fees was improper and, if they did know, they certainly do not seem to have shared their enlightenment with any policyholder, Black included. There is no reason to hold Black or other policyholders to a stricter standard of discovery than Defendants hold themselves to.

Accordingly, Defendants' statute of limitations argument fails.

## X.   CONCLUSION

For the foregoing reasons, Defendants' Amended Motion to Dismiss, ECF No. 59, is **GRANTED** as to Count II (Breach of Contract) and **DENIED** as to Counts I (Money Had and Received) and III (Unjust Enrichment).

A separate order will **ISSUE**.

The Court is now ready to entertain a Motion to Certify an appropriate class or classes.

June ___11___, 2024

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

13