**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

WALTER BLACK III

KEITH BARR
15416 Fairview Road
Waynesboro, MD 21740
(Washington County)

WAYNE BEST
5030 Dorchester Circle
Waldorf, MD 20603
(Charles County)

DAVID FANT SR.
115 Hess Circle
Cheltenham, MD 21787
(Prince George's County)

individually and on behalf of all others similarly situated

Plaintiffs,

vs.

USAA GENERAL INDEMNITY COMPANY
USAA Building
9800 Frederick Road
San Antonio, TX 78288,

GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY
USAA Building
9800 Fredericksburg Rd., C-3-W
San Antonio, TX 78288,

UNITED SERVICES AUTOMOBILE ASSOCIATION
USAA Building
San Antonio, TX 78288,

USAA CASUALTY INSURANCE COMPANY

CASE NO. 8:21-CV-01581-PWG

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

USAA Building
9800 Fredericksburg Road
San Antonio, TX 78288

Defendants.

Plaintiffs Walter Black III, Keith Barr, Wayne Best, and David Fant Sr. ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Amended Class Action Complaint against United Services Automobile Association, USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, and USAA Casualty Insurance Company (collectively, "USAA" or "Defendants"), and allege as follows upon personal knowledge as to certain personal facts, and upon information and belief or the investigation of counsel as to all other matters.

## NATURE OF THIS CASE

1. This class action is brought by Plaintiffs on behalf of themselves and all others similarly situated seeking redress for USAA's failure to make consumers whole when it attempted to remedy its improper pricing practices that caused more than 131,000 USAA automobile insurance customers to be charged late fees illegally over an eight year period starting in 2011 (the "Late Fees"). In 2020, when USAA refunded the unlawfully collected Late Fees to its insureds, it wrongfully withheld the interest and/or financial gains that had accrued over the eight years the money had been in its possession.

2. Defendant United Services Automobile Association is a reciprocal interinsurance exchange headquartered in San Antonio, Texas. United Services Automobile Association provides

insurance and other financial services to members of the armed forces and their families, often through its subsidiaries.

3. Defendants Garrison Property and Casualty Insurance Company, USAA Casualty Insurance Company, and USAA General Indemnity Company are insurance companies headquartered in San Antonio, Texas. All three are subsidiaries of United Services Automobile Association that underwrite insurance policies requested by members of United Services Automobile Association.

4. Defendant United Services Automobile Association, a self-described "diversified financial services group of companies,"[1] and its subsidiaries Defendants USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, and USAA Casualty Insurance Company are hereafter collectively referred to as "USAA" or "Defendants".

5. Defendants are registered to issue insurance policies and indemnify risks in the state of Maryland in accordance with Maryland law.

6. Beginning in June 2011 until August 2018, USAA improperly charged approximately one-hundred-thirty-one-thousand (131,000) automobile insurance policyholders, or members, Late Fees totaling over $8,163,969 without the legally required approval from the Maryland Insurance Commissioner ("MIC"). By doing so, USAA violated Maryland Insurance Article § 27-216(b)(3). While USAA corrected its practice of charging Late Fees to individuals with Maryland billing addresses on August 24, 2018, USAA continued to charge Late Fees to individuals with out-of-state billing addresses with policies insuring only risks in Maryland.

---

[1] https://www.usaa.com/inet/wc/ newsroom_factsheets_main?akredirect=true.

7. USAA filed new fee structures with the MIC effective on January 23, 2019, which allowed it to charge late fees to members for untimely payment. However, pursuant to Maryland Insurance Article §§ 27-216(b)(3)(i) and (b)(3)(ii)(2), such late fees cannot exceed $10.00. From January 23, 2019 to September 30, 2019, USAA violated the Maryland Insurance Article by charging and collecting Late Fees in excess of $10.00 from members holding policies insuring only Maryland risks but who used an out-of-state billing address.

8. USAA and MIC entered into an agreed Consent Order to remedy USAA's violations of the Maryland Insurance Article. The Consent Order, which was executed on July 30, 2020, is attached hereto as **Exhibit A.**

9. Despite the MIC investigation and resulting Consent Order to address USAA's Maryland Insurance Article violations, USAA failed to fully compensate the members who had been improperly charged Late Fees. USAA refunded the members the amount paid in Late Fees, but wrongfully withheld the accrued interest, increased time value of the monies, or other financial gains on the same.

10. Plaintiffs, on behalf of the Class they seek to represent, bring this lawsuit based on USAA's unlawful actions and practices for (i) money had and received, and (ii) unjust enrichment. Through its unlawful practices, USAA improperly charged the putative Class of more than 131,000 current and former members Late Fees and in doing so unlawfully obtained millions of dollars from those members. Upon discovery of the unlawful action, USAA failed to fully compensate the members for their damages as a result of its unlawful actions, specifically the interest or other financial gains earned on the monies unlawfully held by USAA. Accordingly, this lawsuit seeks,

*inter alia*, certification as a class, compensatory and consequential damages, and/or full restitution[2].

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action based on diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 putative Class Members, the amount in controversy exceeds five million dollars ($5,000,000), exclusive of interests and costs, and at least one Class Member is a citizen of a different state than Defendants.

12. Defendants previously moved to dismiss the Complaint in this Action for grounds including lack of subject matter jurisdiction, arguing that the Maryland Insurance Administration had exclusive jurisdiction over the allegations detailed herein. On June 6, 2024, this Court denied Defendants' Rule 12(b)(1) motion. ECF No. 74 at 8.

13. This Court has personal jurisdiction over Defendants because (i) Defendants regularly conduct business or solicit business, engage in other persistent course of conduct and/or derive substantial revenue from products and/or services provided to individuals in the District and in this State and (ii) Defendants have purposefully established substantial, systematic, and continuous contacts with this District and expect or reasonably should expect to be hauled into court here. Thus, Defendants have sufficient minimum contacts with this District, and this Court's exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice. Exercise of jurisdiction by this Court is just and proper because Defendants,

---

[2] Following the denial of Defendants' Motion to Dismiss under Rule 12(b)(1) and (b)(6), the Parties entered a discovery plan (ECF No. 77) that contemplated the possibility of joining parties or amending pleadings. In an Amended Scheduling Order, the deadline to join parties or amend pleadings was set for March 24, 2025. ECF No. 84.

through their business operations, intentionally availed themselves of the markets within this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants regularly do business in this District and are subject to personal jurisdiction in this District.

## PARTIES

### A. Plaintiffs

15. **Plaintiff Walter Black III** is a natural person and a citizen of the State of Maryland and a resident of Prince George's County.

16. Plaintiff Black obtained a USAA automobile insurance policy through USAA in 1978 and continues to be a policyholder. His automobile insurance policy is currently underwritten by Defendant USAA Casualty Insurance Company.

17. USAA improperly charged Late Fees to Plaintiff Black on August 5, 2013; September 5, 2013; and March 5, 2014.

18. Plaintiff Black received a statement dated March 27, 2020 that indicated thirty dollars ($30.00) had been credited to his account. The credits were labeled "LATE FEE REVERSED." The statement failed to provide any information as to the reason for reversal.

19. **Plaintiff Keith Barr** is a natural person and citizen of the State of Maryland and resident of Washington County.

20. Plaintiff Barr previously had a USAA automobile insurance policy, but is now insured by a different carrier. His USAA automobile insurance policy was underwritten by Defendant USAA Garrison Property and Casualty Insurance Company.

21. USAA improperly charged Late Fees to Plaintiff Barr on September 6, 2011 and October 5, 2011.

22. Plaintiff Barr did not receive any renumeration for the amount of money that Defendants gained while unlawfully holding the Late Fees he was wrongly assessed.

23. Plaintiff Barr was never informed by Defendants as to why his Late Fees were reversed.

24. **Plaintiff Wayne Best** is a natural person and citizen of the State of Maryland and resident of Charles County.

25. Plaintiff Best obtained a USAA automobile insurance policy in/around 1999 and continues to be a policyholder. His automobile insurance policy is underwritten by Defendant USAA.

26. USAA improperly charged Late Fees to Plaintiff Best on January 19, 2012, February 17, 2012, and June 20, 2012.

27. Plaintiff Best did not receive any renumeration for the amount of money that Defendants gained while unlawfully holding the Late Fees he was wrongly assessed.

28. Plaintiff Best was never informed by Defendants as to why his Late Fees were reversed.

29. **Plaintiff David Fant** is a natural person and a citizen of the State of Maryland and a resident of Carroll County.

30. Plaintiff Fant obtained a USAA automobile insurance policy in/around 2013 or 2014, and continues to be a policyholder. His automobile insurance policy is underwritten by Defendant USAA General Indemnity Company.

31. USAA improperly charged Late Fees to Plaintiff Fant on September 30, 2014, October 31, 2014, February 27, 2015, March 31, 2015, and June 30, 2015.

32. Plaintiff Fant did not receive any renumeration for the amount of money that Defendants gained while unlawfully holding the Late Fees he was wrongly assessed.

33. Plaintiff Fant was never informed by Defendants as to why his Late Fees were reversed.

**B. USAA Defendants**

34. **United Services Automobile Association (parent)** is a reciprocal interinsurance exchange with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. United Services Automobile Association has been authorized to issue insurance policies in Maryland since July 1, 1954 and continues to be so authorized. Individuals submit an application for insurance to United Services Automobile Association and the company determines whether to accept the risk and, if so, which of the Defendants will underwrite the policy.

35. **USAA General Indemnity Company (subsidiary)** is an insurance company with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. USAA General Indemnity Company has been authorized to issue insurance policies in Maryland since November 6, 1987 and continues to be so authorized. USAA General Indemnity Company is a subsidiary company of United Services Automobile Association and underwrites insurance policies on United Services Automobile Association's behalf.

36. **Garrison Property and Casualty Insurance Company (subsidiary)** is an insurance company with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. Garrison Property and Casualty Insurance Company has been authorized to issue insurance policies in Maryland since May 24, 1918 and continues to be so authorized. Garrison Property and Casualty Insurance Company is a subsidiary company of United Services

Automobile Association and underwrites insurance policies on United Services Automobile Association's behalf.

37. **USAA Casualty Insurance Company (subsidiary)** is an insurance company with its principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288. USAA Casualty Insurance Company has been authorized to issue insurance policies in Maryland since August 11, 1980 and continues to be so authorized. USAA Casualty Insurance Company is a subsidiary company of United Services Automobile Association and underwrites insurance policies on United Services Automobile Association's behalf.

38. USAA provides insurance and other financial services to its individual "members." Membership is restricted to individuals currently serving in any branch of the armed forces, members of the National Guard, individuals serving in the Reserves, veterans who were not dishonorably discharged, spouses and children of the above individuals, and precommissioned officers. Non-members are ineligible to obtain policies, although in special circumstances they can hold USAA policies briefly.

39. USAA heavily advertises its dedication and commitment to serving individuals in the United States Military with integrity.

## FACTS

### A. The Maryland Insurance Article applies to USAA Policies insuring Maryland Risks.

40. At all relevant times, Defendants were authorized to operate as insurers in the state of Maryland. Maryland Insurance Article § 1-201 provides that "a person that engages in or transacts insurance business in the State, or performs an act relative to a subject of insurance resident, located, or to be performed in the State, shall comply with each applicable provision of this article."

41. USAA sells policies to individuals who they define as “members.”

42. To become a member, all an eligible individual must do is purchase a USAA insurance policy.

43. Maryland Insurance Article § 27-216(b)(3)(i) “does not prohibit an authorized insurer from charging and collecting, *if approved by the Commissioner* … reasonable fees for late payment of premiums by policyholders.” (emphasis added).

44. In order for an insurance company to charge late fees, “[t]he Commissioner shall review administrative expenses submitted by an authorized insurer that are associated with late payments … and may approve a late fee … *not to exceed $10*.” Maryland Insurance Article § 27-216(b)(3)(ii) (emphasis added).

**B. USAA Violated the Maryland Insurance Article by Charging Impermissible Late Fees.**

45. Prior to June 27, 2011, Defendants filed billing plans with the MIC that included and allowed them to charge a $10 late fee when members failed to make the required timely payments under those billing plans.

46. On June 27, 2011 Defendants submitted a filing with the MIC and withdrew a billing plan. As a result, Defendants withdrew their authority to charge or collect late fees. This change took effect on August 27, 2011.

47. Because Defendants withdrew their authority to charge late fees with the MIC, USAA was not legally allowed to collect a late fee of any amount from individuals insuring Maryland risks pursuant to Maryland Insurance Article § 27-216(b)(3).

48. USAA was in violation of at least one provision of the Maryland Insurance Article at all times from August 27, 2011 through September 30, 2019. USAA’s initial attempts to prevent the violations from occurring simply led to new violations.

49. USAA violated the Maryland Insurance Article § 27-216(b)(3)(i) from August 27, 2011 until August 24, 2018 by charging and collecting Late Fees from thousands of its members without MIC authorization.

50. In 2018, a USAA member filed a consumer complaint with the MIC regarding her policy termination. In response, the MIC opened a market conduct action (MCPC-1-2019-I) into Defendants' activities relating to their reported violation of Maryland Insurance Article § 27-216. The market conduct action led to a comprehensive investigation into Defendants' compliance with the Maryland Insurance Article.

51. This investigation findings included the discovery that Defendants' filings neither sought nor received authorization for continued collection of Late Fees and therefore, USAA had been collecting Late Fees from thousands of its insureds improperly and against Maryland law since August 2011.

52. As a result of this discovery, on August 24, 2018 Defendants stopped charging Late Fees to members if they had a Maryland mailing address.

53. From August 24, 2018 to January 23, 2019, Defendants continued to unlawfully collect Late Fees from members who insured only risks in Maryland but used an out-of-state mailing address in violation of § 27-216(b)(3)(i) of the Maryland Insurance Article. When this violation was discovered, USAA discontinued the billing practice, effective with bills issued on January 23, 2019.

54. When USAA revised its billing protocols on January 23, 2019, it failed again to correct all of its violations. From January 23, 2019 to September 30, 2019, Defendants collected Late Fees greater than the $10 permitted under § 27-216(b)(3)(ii)(2) of the Maryland Insurance

Article from members with policies insuring only risks in Maryland but with out-of-state billing addresses.

**C. USAA Enters into a Consent Order with the Maryland Insurance Commissioner.**

55. In July 2020, Defendants entered into a Consent Order with the MIC. According to the Consent Order, the MIC "concluded that, during the period of August 27, 2011 to January 23, 2019, [Defendants] violated § 27-216(b)(3)(i) of the Insurance Article." When USAA revised its billing practices to correct the violation, it created new violations. The Consent Order stated that "since January 23, 2019, [Defendants] violated § 27-216(b)(3)(i) and § 27-216(b)(3)(ii)(2) of the Insurance Article by imposing a late fee greater than $10.00 on policyholders who only had a policy or policies insuring Maryland risks, but using an out-of-state mailing address as the billing address for the policy or policies."

56. According to the Consent Order, Defendants paid "restitution" to the Members from whom Defendants had collected Late Fees unlawfully.

57. The MIC also required Defendants to pay a sixty-seven-thousand-five-hundred dollar ($67,500) administrative penalty to the MIC.

58. The MIC further required Defendants to provide an accounting of all Late Fees over ten dollars ($10) that had already been charged and refunded, implement a new billing system to prevent such Late Fees from being collected in the future, and provide an accounting of all such Late Fees that were charged and refunded from the date of the Consent Order until such time as the new billing system was implemented.

**D. USAA Failed to Pay Any Accrued Interest on Unlawful Late Fees to its Members.**

59. Members with active USAA accounts were issued a refund via USAA's usual billing practices. On the billing statements issued by Defendants to its members on or around

March 20, 2020, Defendants provided a credit for Late Fees charged since August 27, 2011. The credit on the statement stated "LATE FEE REVERSED." No explanation was provided to members who had active policies with Defendants at the time the credit was issued.

60. Defendants reported to the MIC that a note was added to the file of each member who received a credit in the event that a member inquired. The note reportedly instructed USAA employees to tell inquiring members:

> We recently conducted a review of Maryland policies and determined that between June 2011 and January 2019, some late fees were charged in error. If the member paid any such fees, and still has an account with us, a credit will be applied to their account balance. If they do not have an account balance, a check will be sent to the member.

61. Even had USAA representatives provided the scripted notice to members, it did not provide members with any details regarding USAA's violations or the circumstances of the refund. USAA's actions prevented, and continue to prevent, USAA members from knowing they are owed monies.

62. Former members with closed accounts who had been charged unlawful Late Fees between August 27, 2011 and January 23, 2019 were issued a check for the amount of the Late Fees charged. The check came with a notice stating:

> We recently conducted a review of Maryland policies and determined that between June 2011 and January 2019, some late fees were charged in error. Please find attached a check with the amount of those late fees reversed. Please note the Maryland Insurance Administration is aware of this issue.

63. Former members with closed accounts to whom USAA determined it owed less than one dollar were not provided any notice or refund. This failure deprived those individuals of the ability to independently verify USAA's determination.

64. None of the payments issued by Defendants included interest or financial gains that the Defendants unjustly received as a result of unlawfully taking money from the putative Class Members and holding it for up to nine years.

65. Defendants collected unlawful Late Fees from their members and used that money in any way they deemed fit for nearly nine years, including the payment of dividends to certain members. Defendants made additional money by using Plaintiffs' and putative Class Members' money, including by generating additional revenue.

66. Because Defendants were wrongfully holding the money, Plaintiffs and putative Class Members did not have use of their money. Plaintiffs and putative Class Members were unable to earn interest on the money and/or increase its value through investment. They were unable to use that money to pay other bills, such as but not limited to high-interest credit cards, loans, and/or utilities. Defendants prevented Plaintiffs and putative Class Members from increasing the value of their money and decreased their ability to pay debts.

67. When USAA collected the unlawful Late Fees, Plaintiffs and putative Class Members lost more than the value of the Late Fees. For example, they lost the interest they needed to pay on credit card debt or other bills and the increased value they would have obtained by investing the money.

68. USAA was able to reinvest the Late Fees into its businesses, into the market, and generate increased revenue. Such corporate growth inherently builds on itself, increasing the value to USAA exponentially.

## CLASS ACTION ALLEGATIONS

69. Plaintiffs bring this lawsuit as a class action, pursuant to Federal Rules of Civil Procedure 23(a) and 23 (b)(1)-(3), on behalf of themselves and all others similarly situated as

members of the proposed Class. This Action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

70. The Class is defined as:

> All individuals who, per the Consent Order of the Insurance Commissioner of the state of Maryland dated July 30, 2020 in Case No. MIC-2020-08-002, were ordered refunds of late fees charged by Defendants between August 27, 2011 and September 30, 2019 and were not paid interest and/or any financial gains on such late fee refunds.

71. Subject to additional information obtained through further investigation and discovery, the foregoing Class may be expanded or narrowed by amendment or amended Complaint.

72. Specifically excluded from the Class are Defendants and any of their respective officers, directors, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff, counsel for Plaintiffs and Defendants, and persons who timely and properly exclude themselves from the Class. Any entity in which one or more Defendant had a controlling interest or which had a controlling interest in one or more Defendant is also excluded from the Class.

73. **Numerosity:** The members of the Class are so numerous such that joinder is impracticable. Plaintiffs believe there are approximately one-hundred-thirty-one-thousand (131,000) Class Members whom USAA identified as being improperly charged Late Fees. The exact number is unknown to Plaintiffs at this time and can only be confirmed from information and records in the possession, custody, or control of Defendants.

74. **Commonality and Predominance**: There are numerous questions of law and fact common to the putative Class Members that predominate over any questions affecting only individual members of the Class. The common questions in this case are capable of having

common answers. If Plaintiffs' claim that Defendants unlawfully and improperly withheld accrued interest or improperly withheld Defendants' financial gains made on unlawfully assessed Late Fees is accurate, Plaintiffs and putative Class Members will have identical claims capable of being efficiently adjudicated and administered in this case. Among the common questions of law and fact are:

A. Whether Defendants unlawfully withheld interest or their financial gains made on Late Fees that they assessed in violation of the Maryland Insurance Article;

B. Whether Defendants were unjustly enriched by their improper conduct;

C. Whether Defendants withheld information from members related to the violation, preventing putative Class Members from being aware they are owed money;

D. Whether Defendants refunded Plaintiffs and members of the putative Class the interest accrued on or the financial gains made on the unlawfully collected Late Fees; and

E. Whether the Defendants are liable for restitution and the amount of such damages and/or restitution.

75. **Typicality**: Plaintiffs claims are typical of the claims of putative Class Members, as they are all based on the same factual and legal theories. The claims of Plaintiffs and putative Class Members are all premised on USAA refunding the amount of money collected in Late Fees rather than the value the money provided to USAA over the time it improperly held the money, including improperly withheld interest and/or financial gains on the money. USAA wrongfully collected Late Fees from the Plaintiffs and then refunded an inadequate sum, thereby profiting from the wrong it committed against Plaintiffs. Similarly, USAA wrongfully collected Late Fees from the putative Class Members and then refunded an inadequate sum, thereby profiting from the wrong it committed against the putative Class Members. Plaintiffs and putative Class Members

lost the increasing value of their money over time as a direct result of USAA's uniform wrongful conduct.

76. **Adequacy**: Plaintiffs willfully and adequately assert and protect the interests of the putative Class, and have retained competent counsel. Plaintiffs have obtained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other respective members of the Classes and have the financial resources to do so. Plaintiffs have no interests antagonistic to those of the putative Class, and there are no defenses unique to Plaintiffs. Neither Plaintiffs nor their counsel have any interests adverse to those of the other putative Class Members.

77. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all putative Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the putative Class are in the millions of dollars, individual damages incurred by each putative Class Member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual putative Class Members prosecuting their own separate claims is remote, and even if every putative Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

78. **Risks of Prosecuting Separate Actions**: The prosecution of separate actions by putative Class Members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court may determine damages should be calculated based on an average credit card rate, while another may determine damages should be based on an average investment rate. Additionally, individual actions may be

dispositive of the interests of the putative Class as a whole, although certain putative Class Members are not parties to such actions.

79. **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Plaintiffs and the proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class. Defendants' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge to those practices hinges on Defendants' conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiffs.

## CAUSES OF ACTION

### COUNT I
### MONEY HAD AND RECEIVED
### (On behalf of Plaintiffs and the Class)

80. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

81. As determined by the Maryland Insurance Commissioner, Defendants collected Late Fees in violation of §§ 27-216(b)(3)(i) and (b)(3)(ii)(2) of the Maryland Insurance Article, including Late Fees in amounts exceeding the rates that Defendants had filed with the Maryland Insurance Commissioner.

82. From August 27, 2011 to January 23, 2019, Defendants improperly assessed unapproved Late Fees to Plaintiffs and putative Class Members in violation of § 27-216(b)(3)(i) of the Insurance Article, which provides that late fees "must be approved by the insurance commissioner."

83. From January 23, 2019 through September 30, 2019, Defendants also improperly assessed Late Fees in excess of $10 to putative Class Members in violation of §§ 27-216(b)(3)(i) and (b)(3)(ii)(2) of the Maryland Insurance Article, which provides that late fees approved by the Maryland Insurance Commissioner must not exceed $10.

84. Upon concluding that Defendants violated multiple provisions of the Maryland Insurance Article, the MIC ordered refunds of the unlawful Late Fees.

85. Due to these Insurance Article violations, Defendants received the benefit of the withheld accrued interest and other financial gains on unlawful Late Fees from Plaintiffs and putative Class Members to which it had no right at law or in equity.

86. Defendants had access to all the interest accruing on the unlawful late fees and/or investment income or other financial opportunities from those monies. While Defendants were continuing to profit by using Plaintiffs' and putative Class Members' monies, Plaintiffs and putative Class Members were denied access to their monies, which prevented them from earning interest and/or investing those sums. If Defendants collected and invested that money at a steady rate since August 27, 2011, the current gained value is millions of dollars.

87. Defendants have failed to refund the interest or other financial gains accrued on the monies it unlawfully collected from Plaintiffs and putative Class Members.

88. It would be inequitable for Defendants to retain any such interest or other financial gains on monies to which it had no right at law or in equity.

**COUNT II**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and Class)**

89. Plaintiffs re-allege and incorporate by all preceding allegations as if fully set forth herein.

90. Plaintiffs and putative Class Members have conferred a benefit on the Defendants as a result of Defendants improperly assessing Late Fees and collecting millions of dollars from Plaintiffs and putative Class Members. Defendants refunded Plaintiffs and putative Class Members only the dollar amount of the Late Fees assessed, without accounting for the interest or other financial gains Defendants had earned on the money. As a result of those actions, Defendants were unjustly enriched at the expense of the Plaintiffs and putative Class Members.

91. Plaintiffs and putative Class Members' detriment and Defendants' enrichment is the direct result of Defendants' illegal charging and collecting of Late Fees as described herein and providing a refund that omitted necessary interest or other financial gain on those monies.

92. Defendants have profited from their unlawful, unfair, and illegal practice at the expense of Plaintiffs and putative Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. It would be inequitable for Defendants to retain benefits, interest earned, earned income, and any other benefit obtained as a result of the conduct described herein. Moreover, Defendants deprived the putative Class Members of the knowledge that USAA owed them money.

93. Defendants informed the MIC that they collected approximately eight-million-one-hundred-sixty-three-thousand-nine-hundred-sixty-nine dollars ($8,163,969) in unlawful Late Fees starting on August 27, 2011 and ending on September 30, 2019. Defendants had use of the money to invest and earn interest from the time it was collected. Defendants earned substantial income from the monies it unlawfully collected from Plaintiffs and putative Class Members. If Defendants had invested that money at a steady rate since August 27, 2011, the current value would be over fifteen million dollars ($15,000,000). The Defendants may have actually used that money in a way far more profitable and been unjustly enriched by an even greater sum.

94. If Defendants do not provide that increased value to the Plaintiffs and putative Class Members from whom they collected the late fees, in proportion to the amount paid, then Defendants have profited from their unlawful actions.

95. Plaintiffs and putative Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment.

96. Justice requires that Defendants provide that investment and/or interest income, or other financial gains to the Plaintiffs and putative Class Members.

## RELIEF REQUESTED

97. Plaintiffs, on behalf of all others similarly situated, request that the Court enter judgment against Defendants that:

A. Determines that this matter may proceed as a class action and certifying the Class;

B. Appoints Plaintiffs as representatives of the Class and appoints Plaintiffs' counsel as Class counsel;

C. Awards full restitution of all funds acquired and subsequently earned from Defendants unlawful collection of late fees, including disgorgement of profits and/or financial gains;

D. Awards pre-judgement and post-judgment interest, as provided by law or equity; and

E. Such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 24, 2025

Respectfully submitted,

__/s/ *Jonathan P. Kagan*__
Jonathan Kagan, Bar No.: 23181
**KAGAN STERN MARINELLO & BEARD, LLC**
238 West Street
Annapolis, MD 21401
Phone: (410) 216-7900
Facsimile: (410) 705-0836
Email: kagan@kaganstern.com

Keith T. Vernon*
Andrew W. Knox*
Kathleen M. Vermilion*
**TIMONEY KNOX, LLP**
400 Maryland Drive
Fort Washington, PA 19034
Phone: (215) 646-6000
Facsimile: (215) 591-8246
Email: kvernon@timoneyknox.com
Email: aknox@timoneyknox.com
Email: kvermilion@timoneyknox.com

Andrea R. Gold
Gemma Seidita*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave., NW
Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: agold@tzlegal.com
Email: gseidita@tzlegal.com

Jonathan Shub*
**SHUB JOHNS & HOLBROOK, LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 453-6551
Email: jshub@shublawyers.com

Karen M. Kohn
**THE KOHN LAW GROUP, PLLC**
1717 K Street, NW, Suite 900
Washington, D.C. 20006
Phone: (202) 465-8686
Facsimile: (202) 871-7394
Email: karen@thekohnlawgroup.com

**Admitted pro hac vice*

*Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of March, 2025, I served via the CM/ECF filing system a copy of the foregoing First Amended Complaint on the following counsel of record:

Matthew H. Kirtland, Esquire
MD State Bar No. 26089
matthew.kirtland@nortonrosefulbright.com
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC 20001

Adam T. Schramek, Esquire**
adam.schramek@nortonrosefulbright.com
Nathan Carl Nagle Damweber, Esquire**
nathan.damweber@nortonrosefulbright.com
Norton Rose Fulbright US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701

*Attorneys for Defendants,*
*USAA General Indemnity Company,*
*Garrison Property and Casualty Insurance Company*
*United Services Automobile Association, and*
*USAA Casualty Insurance Company*

*** Admitted Pro Hac Vice*

*/s/ Jonathan P. Kagan*
Jonathan Kagan, Bar No.: 23181