**UNITED STATES DISTRICFsetlT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| WALTER BLACK III, KEITH BARR, WAYNE BEST, and DAVID FANT SR., individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>USAA GENERAL INDEMNITY COMPANY, GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, UNITED SERVICES AUTOMOBILE ASSOCIATION, USAA CASUALTY INSURANCE COMPANY,<br><br>*Defendants.* | Case No. 8:21-CV-01581-LKG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. LITIGATION AND SETTLEMENT HISTORY ..... 2

A. Description of the Claims and Defenses ..... 2

B. Procedural Background ..... 4

C. Discovery ..... 6

D. Settlement Negotiations ..... 6

E. The Settlement Agreement ..... 7

1. Benefits to the Settlement Class ..... 7

2. Attorney's Fees, Costs and Service Award for Plaintiffs ..... 9

3. Release of Claims ..... 10

4. Notice and Objections ..... 10

III. ARGUMENT ..... 11

A. The Settlement Class Meets All Requirements of 23(a), and (b)(3) and Should Be Certified ..... 11

B. Rule 23(a) Requirements Are Satisfied Here ..... 12

1. 23(a)(1) – "Numerosity" ..... 13

2. Rule 23(a)(2) – "Commonality" ..... 13

3. Rule 23(a)(3) – "Typicality" ..... 16

4. Rule 23(a)(4) – "Adequacy" ..... 16

C. The Proposed Settlement Class Should Be Certified Under Rule 23(b)(3). ..... 18

1. Predominance ..... 18

2. Superiority ..... 19

D. The Settlement Agreement Should Be Preliminarily Approved By the Court ..... 20

E. Standards and Procedures for Preliminary Approval ..... 21

1. The Settlement Satisfies the Fairness Prong for Preliminary Approval ..... 21

a. Negotiations Occurred at Arm's Length by Experienced Counsel ..... 22

b. There Has Been Sufficient Discovery At This Posture ..... 24

c. The Proponents of the Settlement Are Experienced in Similar Litigation ..... 25

2. The Settlement Satisfies the Adequacy Prong for Preliminary Approval ..... 26

a. The Strengths and Weaknesses of Plaintiffs' Case Support Approval ..... 26

b. The Cost of Additional Litigation Supports Preliminary Approval ..... 27

c. Other Factors ..... 27

F. The Court Should Appoint Plaintiffs' Counsel as Class Counsel ..... 27

G. The Proposed Class Notice Program Should Be Approved ..... 28

H. Proposed Schedule of Events ..... 31

I. A Final Approval Hearing Should Be Scheduled ..... 33

IV. CONCLUSION ..... 33

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. Carrington Mortg. Servs., LLC*,
1:20-cv-023969-RDB, Dkt. 56 (D. Md. July 6, 2022)....14, 25, 29

*All. To End Repression v. City of Chi.*,
561 F. Supp. 537 (N.D. Ill. 1982)....24

*In re Am. Cap. S'holder Derivative Litig.*,
2013 WL 3322294....21, 22, 23, 26

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)....19

*Boger v. Citrix Sys., Inc.*,
No. 19-cv-01234-LKG, 2023 WL 3763974 (D. Md. June 1, 2023)....9, 10

*Boyd v. Coventry Health Care Inc.*,
299 F.R.D. 451 (D. Md. 2014)....16, 17

*Brunson v. Louisiana-Pacific Corp.*,
818 F.Supp.2d 922 (D.S.C. 2011)....23

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
6 F.3d 177 (4th Cir. 1993)....13

*Chado v. Nat'l Auto Inspections, LLC*,
No. ADC-17-2945, 2018 WL 3240018 (D. Md. July 13, 2018)....16

*In re Checking Acct. Overdraft Litig.*,
No. 09-MD-2036, Order Granting Class Certification, DE # 2697 (S.D. Fla. May 16, 2012)....15

*In re Checking Acct. Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011)....15

*In re Checking Acct. Overdraft Litig.*,
281 F.R.D. 667 (S.D. Fla. 2012)....15

*In re Checking Acct. Overdraft Litig.*,
286 F.R.D. 645 (S.D. Fla. 2012)....15

*In re Checking Acct. Overdraft Litig.*,
307 F.R.D. 630 (S.D. Fla. 2015)....15

*In re Checking Acct. Overdraft Litig.*,
307 F.R.D. 656 (S.D. Fla. 2015)....15

*In re Checking Acct. Overdraft Litig.*,
No. 09-MD- 2036, Order Granting Class Certification, DE # 2673 (S.D. Fla. May 4, 2012) ....15

*In re Checking Acct. Overdraft Litig.*,
No. 09-MD-2036, Order Granting Class Certification, DE # 2847 (S.D. Fla. July 19, 2012)....15

*Curtis v. Genesis Eng'g Sols., Inc.*,
No. GJH-21-722, 2022 WL 1062024 (D. Md. Apr. 8, 2022) ....20

*Decohen v. Abbasi, LLC*,
299 F.R.D. 469 (D. Md. 2014).... *passim*

*Devine v. City of Hampton, Va*,
No. 4:14CV81, 2015 WL 10793424 (E.D. Va. Dec. 1, 2015)....23

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)....30

*Flinn v. FMC Corp.*,
528 F.2d 1169 (4th Cir. 1975) ....23

*Gagliastre v. Capt. George's Seafood Res., LP*,
No. 2:17CV379, 2019 WL 2288441 (E.D. Va. May 29, 2019)....23

*Gaston v. LexisNexis Risk Sols. Inc.*,
No. 516CV00009KDBDCK, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021)....23

*Grunewald v. Kasperbauer*,
235 F.R.D. 599 (E.D. Pa. 2006)....29

*Gunter v. United Fed. Credit Union*,
No. 3:15-cv-00483-MMD-WGC, 2017 WL 4274196 (D. Nev. Sep. 25, 2017)....15

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
855 F. Supp. 825 (E.D.N.C. 1994)....22

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
No. CV JKB-16-3025, 2019 WL 3183651 (D. Md. July 15, 2019) ....22

*Jernigan v. Protas, Spivok & Collins, LLC*,
No. CV ELH-16-03058, 2017 WL 4176217 (D. Md. Sept. 20, 2017) ....9

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ....25

*Jones v. Fid. Res., Inc.*,
No. CV RDB-17-17447, 2019 WL 4141015 (D. Md. Aug. 30, 2019) .............................16, 19

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) ..........................................................................................10, 29

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) ..................................................................................22

*In re Mid-Atl. Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983)........................................................................................21

*Muhammad v. Nat'l City Mortg., Inc.*,
No. CIV.A. 2:07-0423, 2008 WL 5377783 (S.D.W. Va. Dec. 19, 2008)...............................23

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)..............................................................................................................30

*Pierce v. Statebridge Co. LLC*,
No. 1:20:CV117, 2021 WL 1711784 (M.D.N.C. Apr. 29, 2021)...........................................10

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000)...............................................................................................23

*S.C. Nat. Bank v. Stone*,
749 F. Supp. 1419 (D.S.C. 1990)..........................................................................................20

*Smith v. Bank of Haw.*,
No. 16-00513-JAO-RLP , 2019 WL 2712262 (D. Haw. Jun. 28, 2019) ................................15

*Smith v. Bank of Haw.*,
No. 16-00513-JAO-RLP, 2019 WL 3297301 (D. Haw. Jan. 30, 2019) .................................15

*Snider Int'l Corp. v. Town of Forest Heights, Md.*,
739 F.3d 140 (4th Cir. 2014) .................................................................................................30

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
325 F.R.D. 136 (D.S.C. 2018) ..............................................................................................15

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)...............................................................................................................19

*In re Under Armour Sec. Litig.*,
631 F. Supp. 3d 285 (D. Md. 2022).......................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...............................................................................................................13

*Williams v. First Nat. Bank*,
216 U.S. 582 (1910)....................20

*Yates v. NewRez LLC*,
No. CV TDC-21-3044, 2023 WL 5108803 (D. Md. Aug. 9, 2023)....................13

*Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*,
758 F.2d 86 (3d Cir. 1985)....................29

**Rules**

Fed. R. Civ. P. 23....................21, 28

**Other Authorities**

1 Alba Conte & Herbert Newberg, *Newberg on Class Actions (Fourth)* (2002)....................13

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2010)....................24, 31

*Manual for Complex Litig. (Fourth)* (2004)....................21, 29, 31

## I. INTRODUCTION

After vigorous advocacy and negotiation, Plaintiffs Walter Black III, Keith Barr, Wayne Best, and David Fant Sr. (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, and Defendants USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, United Services Automobile Association, and USAA Casualty Insurance Company (collectively "Defendants) entered into a Class Action Settlement (the "Settlement") to resolve the claims for unjust enrichment and money had and received that Plaintiffs alleged in their Complaint. Defendants agreed to pay $5 million to resolve Plaintiffs' claims. The Settlement Agreement, with exhibits, is submitted as Exhibit 1 to this Motion.

Plaintiffs respectfully submit this Memorandum of Law in support of their unopposed motion for entry of an Order that will: (i) preliminarily approve the proposed Settlement, which provides on behalf of the Class the $5 million Settlement Amount[1]; (ii) certify the proposed Class for settlement purposes; (iii) establish a plan for providing notice of the Settlement to Class Members; (iv) appoint Class Counsel; (v) approve the Settling Parties' selection of a Settlement Administrator; and (vi) set a hearing for consideration of final approval of the Settlement and consideration of Lead Counsel's motion for Service Awards to Plaintiffs and an award of attorneys' fees and reimbursement of litigation expenses.

The proposed Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. It provides a substantial and immediate benefit to them in the form of a $5 million common fund. It is the product of vigorous litigation, which included motion practice, exchange and review of key documents, expert damages analyses, and arm's-length negotiations between

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in the Settlement Agreement dated September 16, 2025 (the "Settlement Agreement") entered between Plaintiffs and Defendants.

experienced counsel directed by a seasoned and respected Mediator, the Honorable Benson E. Legg (Ret.). The benefit of the proposed Settlement must be considered in the context of the risk that, in its absence, protracted litigation might lead to little or even no recovery on behalf of the proposed Settlement Class. Defendants mounted a vigorous defense and Plaintiffs expect that Defendants would have continued to do so through trial and appeals.

In negotiating and finalizing the terms of the Settlement Agreement, Class Counsel have concluded that the Settlement is in the best interests of the Settlement Class in light of, among other considerations: (1) the substantial monetary relief afforded to the Settlement Class; (2) the risks and uncertainties of complex litigation such as this action; (3) the expense and length of time necessary to prosecute this action through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement Agreement promptly in order to provide effective relief to the Settlement Class. In light of these factors, and as discussed further below, Plaintiffs believe that the proposed Settlement is fair and reasonable, and thus, merits preliminary approval.

## II. LITIGATION AND SETTLEMENT HISTORY

### A. Description of the Claims and Defenses

On June 25, 2021, Plaintiff Black filed a class action Complaint on behalf of himself and others similarly situated, alleging that Plaintiff and the putative class were entitled to millions of dollars in gains, profits, and/or otherwise increased funds Defendants earned through its illegal collection of Plaintiff Black and the putative class's monies. *See* ECF No. 1. Plaintiffs allege that Defendants illegally collected Late Fees from over 127,000 Maryland policyholders, including Plaintiffs, between June 27, 2011 and September 30, 2019, in violation of Maryland Insurance Code § 27-216(b)(3)(i) and (b)(3)(ii)(2). *See generally,* FAC. Defendants are interrelated insurance entities that Plaintiffs allege operate as follows: Defendant USAA is a reciprocal interinsurance exchange who receives insurance applications from military service members, veterans, or their

families, and then determines whether it or one of its subsidiaries, including Defendant USAA-GIC, Garrison, or USAA-CIC will underwrite the policy. *See id.* at ¶¶ 4; 34-38.

In 2018, a USAA member filed a consumer complaint with the Maryland Insurance Administration ("MIA") about an unrelated matter. FAC ¶ 50. This prompted the MIA to open a market conduct action investigating Defendants' alleged violation of the Maryland Insurance Article. which is how the MIA became aware of Defendants' illegal assessment of Late Fees. *Id.* at ¶¶ 50-51. During the investigation, the MIA concluded, over Defendants' objection, that between June 2011 and September 2019, Defendants had improperly collected millions in Late Fees. *Id.* at ¶ 93.

In March of 2020, Defendants refunded policyholders, including Plaintiffs, the $7.35M in fees that they had collected, but did not return to their policyholders the gains, profits, interest and/or otherwise increased value of the wrongly assessed Late Fees and, instead, pocketed the increased value of the fees. *Id.* at ¶¶ 18, 22, 26, 32, 59-68. Plaintiffs and class members received refunds of the principal amount of Late Fees that were illegally charged devoid of any disclosure that such charge was the result of illegal activity by Defendants or the investigation by the MIA. Defendants did not have a legal or equitable basis to retain those gains. *See e.g., id.* at ¶ 9.

Defendants and the MIA entered into a final Consent Order on July 19, 2020, which documented the MIA investigation, internal audit, and refunds issued by Defendants, along with additional changes that Defendants were required by the MIC to implement. *Id.* at ¶¶ 55-58. The Consent Order is the "final order" regarding the illegality of Defendants' assessed Late Fees and includes the MIC's final conclusions of law that Defendants violated multiple provisions of the Insurance Article. ("Consent Order") at ¶ L (attached to the original Complaint as Exhibit A, ECF No. 1-1). The Consent Order further states that it "shall not be construed to resolve or preclude

any potential or pending civil . . . prosecution by any other person . . . regarding any conduct by [Defendants] including the conduct that is the subject of this Order[.]" *Id.* at ¶ I. Plaintiffs brought this action to recover the gains that Defendants made and retained on the illegally charged Late Fees.

Defendants deny vigorously all allegations of the Complaint. Defendants contend that the Late Fees were properly collected, that charging them was legal because they had been approved by MIA, that the Late Fees generated no interest or gains, that not including interest on a contested refund was not unjust, and that no Plaintiff was entitled to any additional monies. Defendants further contend that the Consent Order was the result of a settlement negotiation with the MIA whereby it agreed not to charge interest on the refunds, that the dispute was within the exclusive jurisdiction of the MIA, and that all of the named Plaintiffs' claims were time barred.

**B. <u>Procedural Background</u>**

Plaintiff Black's Complaint brought claims under three distinct, common law theories: money had and received, breach of contract, and unjust enrichment. Plaintiff Black's case was originally assigned to Judge Paul W. Grimm. On October 25, 2021, Defendants moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim. *See* ECF No. 39. Defendants argued, among other things, that the MIA had exclusive jurisdiction over Plaintiff's claims and that the MIA had already decided Defendants' "voluntary" repayment of illegal fees rendered it unnecessary for Defendants to disgorge themselves of the realized benefit of having used its members' money for nearly a decade. Defendants also argued that dismissal was warranted as to Defendants USAA, USAA-GIC, and Garrison because Plaintiff Black was not in contractual privity with those Defendants. Plaintiff Black and Defendants engaged in letter briefing regarding Plaintiff Black's request to partake in limited jurisdictional discovery. *See* ECF Nos. 40,

42, 43. Before Judge Grimm ruled, the case was re-assigned to Judge Peter J. Messitte on October 11, 2022.

On October 19, 2022, before Plaintiff Black was able to oppose Defendants' original motion to dismiss, the Court *sua sponte* issued a Letter Order concluding that the MIA only had primary jurisdiction over Plaintiff's claims and rejected Defendants' argument that the MIA had exclusive jurisdiction. ECF No. 47. The Court stayed the matter pending administrative exhaustion before the MIA. *Id.*

As required by the Letter Order, Plaintiff Black filed an administrative complaint on behalf of himself and others similarly situated before the MIA on January 11, 2023. The administrative complaint made it clear that Plaintiff and the putative class were pursuing relief in the MIA solely at the instruction of the Court.

On March 25, 2023, the MIA responded in a short letter that it "considers the issues addressed by the market conduct investigation and the resulting Consent Order to be closed at this time." *See* ECF No. 57, Ex. A. Following direction from the MIA, the Parties jointly moved the Court to lift the administrative stay. *Id.*

On July 10, 2023, Defendants moved to dismiss Plaintiff Black's complaint for lack of subject matter jurisdiction and failure to state a claim under Rule 12(b)(6). ECF No. 59. Following full briefing on Defendant's motion to dismiss and oral argument before Judge Messitte, the Court issued an Order and Opinion. ECF No. 74 ("MTD Decision"). Judge Messitte largely denied USAA's motion, ruling that this Court has jurisdiction, and that Plaintiff Black adequately alleged his unjust enrichment and money had and received causes of action against all Defendants. Judge Messitte further stated that the Court was ready to receive class certification briefing. *Id.*

On January 24, 2025, the Action was reassigned to Judge Lydia Kay Griggs following the passing of Judge Messitte.

On March 24, 2025, Plaintiff Black timely amended the Complaint to add Plaintiffs Barr, Best, and Fant, who are insured by Defendants USAA, Garrison, and GIC, respectively. Defendants moved to dismiss Plaintiffs' First Amended Complaint on April 7, 2025. The motion was fully briefed by May 5, 2025.

Prior to the Court's decision on the Motion to Dismiss the First Amended Complaint, on June 4, 2025, the Parties filed a Notice of Settlement, alerting the Court that a Settlement was reached and asking the Court to stay all deadlines pending the filing of the Agreement.

**C. Discovery**

Following the first MTD Decision, on July 18, 2024, the Parties jointly moved the Court to set an agreed upon discovery and trial schedule. From July 18, 2024, through June 3, 2025, the Parties engaged in substantial discovery efforts, including the exchange of written discovery and substantial document discovery. Plaintiffs took the depositions of several of Defendants' witnesses.

**D. Settlement Negotiations**

The Parties also engaged the mediation services of the Honorable Benson E. Legg (Ret.). The Parties prepared comprehensive mediation statements—with expert calculations and analyses—in advance of a meditation on November 7, 2024. While the Parties were unable to resolve their claims at the November 7, 2024, mediation, the parties agreed to and continued communicating with Judge Legg to work toward resolution, including by presenting supplemental briefings and written materials. With discovery and additional pleading and briefing ongoing, the Parties continued to discuss the prospect of settlement, communicating

at times directly and through Judge Legg. The Parties ultimately agreed to the mediator's proposal on key settlement terms on June 3, 2025.

### E. The Settlement Agreement

#### 1. Benefits to the Settlement Class

The Settlement Agreement establishes a Settlement Amount of $5 million as compensation to the Settlement Class to compensate them for the Defendants' alleged wrongdoing.

Under the terms of the Settlement Agreement, within ten (10) business days after the Court enters a Preliminary Approval Order, Defendants will cause $5 million to be deposited into an Escrow Account which are deemed a Qualified Settlement Fund. (Settlement Agreement ¶ 69). Defendants shall separately pay all Settlement Administration Costs. *Id.*

The Settlement Fund shall be used to pay Settlement Class Members their respective Settlement Class Member Payments; any and all attorneys' fees and costs awarded to Class Counsel; any Service Awards to the Class Representatives; and any distribution of Residual Funds as required under this Agreement. (Settlement Agreement ¶ 69). The Settlement Administrator will be responsible for calculating the amounts payable to Members of the Settlement Class pursuant to the Calculation and Disbursement of Settlement Class Member Payments. *Id.*, ¶¶ 103-104.

**Current Policyholders (*id.* ¶ 106(a)):** For Settlement Class Members who are Current Policyholders, payment shall be made by a credit to those Policyholders' Accounts maintained individually at the time of the credit. The Settlement Administrator shall transfer the funds necessary for Defendants to make these credits no later than 30 days after the Effective Date. Defendants shall notify Current Policyholders of any such credit on the statement on which the credit is reflected by stating "Late Fee Litigation Credit" or something similar. Defendants will bear any costs associated with implementing the credits and notification required by this

paragraph. If by the deadline for Defendants to apply credits of Settlement Class Member Payments to the statements Defendants are unable to complete certain credits, or it is not feasible or reasonable to make the payment by a credit, Defendants shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with the procedure for compensating Former Policyholders.

**Former Policyholders (*id.* ¶ 106(b)):** For Settlement Class Members who are Former Policyholders, Settlement Payments will be mailed by check with an appropriate legend, in a form approved by Class Counsel and Defendants' Counsel, to indicate that it is from the Settlement Fund. Checks will be cut and mailed by the Settlement Administrator and will be sent to the addresses that the Settlement Administrator reasonably believes is valid. Checks shall be valid for 180 days. Reissued checks shall be valid for 60 days. Checks will be made payable to the same person or estate as was used for late fee refunds per the Consent Order Files. The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Funds whose check is returned by the Postal Service as undeliverable (such as by running addresses of returned checks through the Lexis/Nexis database that can be utilized for such purpose), and will re-mail it once if an updated address is located. In the event of any complications arising in connection with the issuance or cashing of a check, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel. Absent specific instructions from Class Counsel and Defendants' Counsel, the Settlement Administrator shall proceed to resolve the dispute using its best practices and procedures to ensure that the funds are fairly and properly distributed to the person or persons who are entitled to receive them. All costs associated with the process of printing and mailing the checks and any accompanying communication to Former Policyholders shall be borne by Defendants separately.

Pursuant to the terms of the Settlement Agreement, the payment will be made to Members of the Settlement Class who meet the Class definition, without the need for submitting a claim form or other request for payment. The Settlement Agreement does not provide for a "claims made" Settlement, or for any "reversion" of the Settlement Fund to Defendants or any of their affiliates. Each Settlement Class Member will be allocated a $5 minimum payment from the Net Settlement Fund. The remaining funds will be allocated proportionately by the amount of gains that the Settlement Class Member would have received on March 20, 2020, had simple interest been included in the late fee refund at eight (8) percent per annum. In the event information to perform this calculation for any individual Settlement Class Member is unavailable, a calculation will be performed that assumes the amount refunded was charged in a single sum on March 20, 2016 (four years prior to the refund). The following calculation will be used to proportionately allocate the Net Settlement Fund:

(Settlement Class Member's Late Fee Interest / Sum of All Settlement Class Members' Late Fee Interest) X Net Settlement Fund. Settlement Agreement ¶ 103.

**2. Attorney's Fees, Costs and Service Award for Plaintiffs**

Plaintiffs' Counsel's fees, litigation costs, and Plaintiffs' Service Awards will be paid from the Settlement Amount, as the Court may so order. Settlement Agreement ¶ 114. Class Counsel will petition the Court for an award of attorney's fees and costs in an amount not to exceed $2 million of the Gross Settlement Amount, (*id.*) prior to the hearing on final approval of the settlement, but they note now that 33%-40% is commonly awarded in class actions such as this. *See e.g.*, *Boger v. Citrix Sys., Inc.*, No. 19-cv-01234-LKG, 2023 WL 3763974 at *6-7 (D. Md. June 1, 2023) (Award of fees in the amount of $916,667.67, equivalent one-third of settlement amount plus cost in a TPCA case); *Jernigan v. Protas, Spivok & Collins, LLC*, No. CV ELH-16-03058, 2017 WL 4176217, at *5 (D. Md. Sept. 20, 2017) ("Fees awarded under the 'percentage-

of-recovery' method in settlements under $100 million have ranged from 15% to 40%.") (citation omitted); *Pierce v. Statebridge Co. LLC*, No. 1:20:CV117, 2021 WL 1711784, at *3 (M.D.N.C. Apr. 29, 2021) ("The other method for determining fees, the percentage of the fund method, reduces class members' recovery by a benchmark percentage, typically 33% to 40% of the common fund."); *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (affirming fee award of $1,300,000 or "43% of the common fund" in class action alleging mortgage servicer violated federal and state consumer-protection laws). Thus, the award in this case will be well within this range and less than 40%.

Class Counsel also will petition the Court for a Service Award not to exceed $7,500.00 for Plaintiff Black and in an amount not to exceed $3,500.00 for Plaintiffs Barr, Best and Fant, in recognition of the service of Plaintiffs. All requests will be subject to Court approval. (Settlement Agreement) ¶ 118. This request is in line with service awards approved by courts in this Circuit in similar cases, which recognize the valuable contributions Class Representatives make to actions such as this that benefit the Class as a whole. *Boger,* 2023 WL 3763974 at *7. (approving $10,000 service award to the class representative).

**3. Release of Claims**

Under the terms of the Settlement Agreement, Plaintiffs and the Members of the Settlement Class, shall release any and all claims, including all claims asserted or that could have been asserted in the Class Action. The full scope of the Settling Parties' releases is set forth in the Settlement Agreement at § XIII, ¶¶ 110-113.

**4. Notice and Objections**

Pursuant to Fed. R. Civ. P. 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Settlement Class and an opportunity for Members of the Settlement Class to object to approval of the Settlement. (Settlement Agreement at § IX, ¶¶ 98-100) The Settling Parties have

agreed, subject to Court approval, to a notice plan that will provide the Settlement Class with sufficient information to make an informed decision about whether to object to the proposed Settlement. The proposed Settlement Notice procedure includes email addresses and direct mailing of the Settlement Notice (attached as Exhibits 1A-C to the Settlement Agreement), to the email addresses Defendants have on file for the Settlement Class and last known mailing address of each Member of the Settlement Class, which will be supplied by Defendants. The Notice will inform the Settlement Class of the nature of the action, the litigation background and the terms of the Settlement Agreement, including the definition of the Settlement Class, the relief provided, the intent of Class Counsel to seek fees and costs, the proposed Service Awards payable to Plaintiffs, and the scope of the release and binding nature of the Settlement on Members of the Settlement Class. It also describes the procedure for objecting to the Settlement and states the date, time and place of the final fairness hearing. The Settlement Agreement also provides that the Settlement Administrator shall establish a Settlement Website that will include, among other documents, the Notice, the Settlement Agreement and its exhibits. Settlement Agreement at ¶ 80.

## III. ARGUMENT

### A. The Settlement Class Meets All Requirements of 23(a), and (b)(3) and Should Be Certified

In connection with preliminary approval of the Settlement, Plaintiffs seek class certification for settlement purposes only, and Defendants do not object to, certification of the Settlement Class defined as follows:

All individuals who, per the Consent Order, received Late Fee refunds.[2]

[2] Excluded from the class are the Honorable Lydia Kay Grigsby , any and all court staff who would otherwise qualify as putative class members, Plaintiffs' Counsel who would otherwise qualify as putative class members, and Defendants' Counsel who would otherwise qualify as putative class members. .

The Consent Order is defined as the Consent Order signed in 2020 between Defendants and the Maryland Insurance Association pursuant to which Late Fees were refunded to the Settlement Class. Settlement Agreement at ¶ 23. "Late Fee" is defined in the Settlement Agreement as fees charged by Defendants to certain Maryland policyholders that were refunded pursuant to the Consent Order. Settlement Agreement at ¶ 37. In order to certify the Settlement Class, Plaintiffs must satisfy each of the four elements of Rule 23(a), and the requirements of Rule 23(b)(3).

In a motion for preliminary approval, in order for the Court to approval the proposal under Rule 23(e)(2), the Parties must show that the Court will likely be able to "certify the class for purposes of judgment and on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). The Settlement Class should be certified because Plaintiffs have met the requirements under Rule 23(a) and Rule 23(b)(3).

### B. <u>Rule 23(a) Requirements Are Satisfied Here</u>

In order to certify a class under Rule 23, a named plaintiff must establish that the class meets each of the four requirements of subsection (a) of the Rule which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four elements are referred to in the shorthand as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Here, all four elements are satisfied for the purpose of certifying the proposed settlement class.

**1. 23(a)(1) – "Numerosity"**

The proposed Settlement Class is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. "Classes of as few as 25 to 30 have been found to raise the presumption that joinder would be impracticable" *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 300 (D. Md. 2022) (internal citation and quotations omitted); *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (noting district court's finding "that some 480 potential class members would easily satisfy the numerosity requirement"). Here, 127,242 individuals were improperly charged a Late Fee. Thus, the joinder of all Class members is impracticable, and numerosity is satisfied.

**2. Rule 23(a)(2) – "Commonality"**

The Settlement Class satisfies the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50. A single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See Yates v. NewRez LLC*, No. CV TDC-21-3044, 2023 WL 5108803, at *6 (D. Md. Aug. 9, 2023) ("the commonality requirement can be met when there is even a single common question of law or fact shared by the named plaintiff and the putative class."); *see also* 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions (Fourth)*, § 3.10 at 272-74 (2002).

In this case, the commonality requirement is readily satisfied because Plaintiffs' allegations arise from the same common nucleus of operative facts, and all members of the proposed Settlement Class will cite the same common evidence to prove their identical claims. Thus, in this case, a "class-wide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Under these circumstances, commonality is

easily satisfied. Here, if Plaintiffs prevail on their central claim that Defendants unlawfully and improperly withheld accrued interest or improperly withheld their financial gains made on unlawfully assessed Late Fees, they would have identical claims to Class Members capable of being efficiently adjudicated and administrated in the same case. Questions of law and fact common to the Class include:

a. Whether Defendants unlawfully withheld interest on their financial gains made on Late Fees that they assessed in violation of the Maryland Insurance Article§ 27-216(b)(3)(i) and (b)(3)(ii)(2);

b. Whether Defendants were unjustly enriched by their improper conduct;

c. Whether Defendants should not have been permitted to retain the interest and financial gains made on the Late Fees;

d. Whether Defendants withheld information from members related to the violation, preventing putative Class Members from being aware they are owed money;

e. Whether Defendants refunded Plaintiffs and members of the putative Class the interest accrued on or the financial gains made on the unlawfully collected Late Fees; and

f. Whether the Defendants are liable for restitution and the amount of such damages and/or restitution.

These are the core issues in this case and the alleged bases for the harms that unify all Members of the Settlement Class. Defendants' alleged conduct impacted Members of the Settlement Class in precisely the same way. In cases challenging the fee practices of financial institutions, courts routinely grant class certification. *See, e.g.*, *Alexander v. Carrington Mortg. Servs., LLC*, 1:20-cv-023969-RDB, Dkt. 56 at 16-17 (D. Md. July 6, 2022) (finding commonality

where parties challenged assessment of convenience fees); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 152-53 (D.S.C. 2018) (finding commonality where "the *answer* to the overarching question of whether [the bank's fee practice] was permissible … will resolve large swathes [of] class members' available balance claims."); *see also, Gunter v. United Fed. Credit Union*, No. 3:15-cv-00483-MMD-WGC, 2017 WL 4274196 (D. Nev. Sep. 25, 2017); *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656 (S.D. Fla. 2015) (Wachovia Bank), pet. for leave to appeal denied, No. 15-90026 (11th Cir. Dec. 1, 2015); *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 630 (S.D. Fla. 2015) (Wells Fargo), pet. for leave to appeal denied, No. 15-90024 (11th Cir. Dec. 1, 2015); *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012) (Comerica), pet. for leave to appeal denied, No. 12-90032 (11th Cir. Dec. 13, 2012); *In re Checking Acct. Overdraft Litig.*, No. 09-MD-2036, Order Granting Class Certification, DE # 2847 (S.D. Fla. July 19, 2012) (Capital One), pet. for leave to appeal denied, No. 12- 90041 (11th Cir. Feb. 13, 2013); *In re Checking Acct. Overdraft Litig.*, No. 09-MD-2036, Order Granting Class Certification, DE # 2697 (S.D. Fla. May 16, 2012) (PNC); *In re Checking Acct. Overdraft Litig.*, No. 09-MD- 2036, Order Granting Class Certification, DE # 2673 (S.D. Fla. May 4, 2012) (BancorpSouth); *In re Checking Acct. Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012) (TD); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) (Union Bank), pet. for leave to appeal denied, No. 11-90012 (11th Cir. Oct. 7, 2011); *Smith v. Bank of Haw.*, No. 16-00513-JAO-RLP, 2019 WL 3297301 (D. Haw. Jan. 30, 2019), report and recommendation adopted in part, rejected in part, *Smith v. Bank of Haw.*, No. 16-00513-JAO-RLP , 2019 WL 2712262 (D. Haw. Jun. 28, 2019).

Thus, the commonality requirement is readily satisfied for the Class.

### 3. Rule 23(a)(3) – "Typicality"

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. FED. R. CIV. P. 23. While "the commonality and typicality requirements of rule 23(a) tend to merge[,]" typicality focuses on the sufficiency of the plaintiffs' claims. *See Jones v. Fid. Res., Inc.*, No. CV RDB-17-17447, 2019 WL 4141015, at *9 (D. Md. Aug. 30, 2019). A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) ("The typicality requirement focuses on 'whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'") "[A] plaintiff's claim may factually differ and still be 'typical' of class member claims, if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Id.* (quotations omitted); *see also Chado v. Nat'l Auto Inspections, LLC*, No. ADC-17-2945, 2018 WL 3240018, at *6 (D. Md. July 13, 2018) (typicality exits where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented.").

Here, Plaintiffs have the same claims as the Class for unjust enrichment and money had and received which are premised on Defendants' wrongful assessment and collection of Late Fees, and refunding only the principal amount of the Late Fees without any interest and/or financial gains accrued. Thus, the typicality requirement is satisfied.

### 4. Rule 23(a)(4) – "Adequacy"

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. To evaluate adequacy, the Court considers whether "(1) the named plaintiff's interests are not opposed to those of other class

members, and (2) the plaintiff's attorneys are qualified, experienced, and capable." *Boyd*, 299 F.R.D. at 459.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Class Members. Plaintiffs were all charged unlawful Late Fees by Defendants and only received a refund for the amount of the assessed Late Fees without any interest and/or gains Defendants made on that money while it was in their possession. Like other members of the Class, the proposed Class Representatives seek to maximize the recovery to the Class through this litigation. As such, Plaintiffs' interests are perfectly aligned with the interests of the absent Class Members, thereby meeting the first adequacy prong.

Second, as discussed below, the proposed Class Representatives have retained counsel with significant experience in federal class actions, and in particular, cases challenging improper business practices. *McNeil v. Capital One Bank*, N.A., No. 1:19-cv-004730-RER-TAM (E.D.N.Y.) (class counsel, including Andrea Gold of Tycko & Zavareei, obtained final approval of $16 million settlement); *Lloyd v. Navy Fed. Credit Union*, Case No. 3:17-cv-01280-BAS-RBB (S.D. Cal.) (class counsel, including Andrea R. Gold, obtained final approval of $24.5 settlement); *Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-00103-LO-MSN (E.D. Va.) (class counsel, including Andrea R. Gold, obtained final approval of $16 million settlement); *Smith v. Fifth Third Bank*, No. 1:18-cv-464-DRC-SKB (S.D. Ohio) (class counsel, including Andrea R. Gold, obtained final approval of $5.2 million settlement); *Roy v. ESL Fed. Cred. Union*, No. 6:19-cv-06122-FPG-MJP (W.D.N.Y.) (class counsel, including Andrea R. Gold, obtained final approval of $1.7 million class settlement); *Leverick, et al. v. Gateway Energy Servs. Corp.*, No. 7:21-cv-01642 (S.D.N.Y) and accompanying State Court case, *Bell v. Gateway Energy Servs. Corp.*, No. 031168/2018 (S.C.N.Y.-Rockland County) (class counsel, including Keith T. Vernon, obtained final approval

of a $12.8 million class settlement); *Quezada v. Arbitersports, LLC*, No. 2:20-cv-05193-TJS (E.D. Pa.) (class counsel, including Keith T. Vernon, obtained final approval of a class settlement); *Duffy v.Mazda Motor of Am., Inc.et al.*, No.3:24-cv-388-BJB (W.D. Ky.) (co-counsel, including Keith T. Vernon and Andrew W. Knox, obtained preliminary approval of class settlement); *Chavez-Franco v. Prompt Restoration, Inc.*, No. 1:14-cv-00294-WDQ (D. Md) (Jonathan Kagan served as counsel of record defending a putative class action); *Borst v. Marriott Int., Inc.*, No. 8:19-cv-00060-PWG (D. Md.)(Jonathan Kagan served as counsel of record prior to MDL transfer and consolidation); *Herrarte,v. Unlimbited Tree Serv. of Md., Inc.*, No. C-02-CV-23-002348 (Cir. Ct. Anne Arundel Cty, Md.). Thus, Plaintiffs are adequate representatives of the proposed Settlement Class and are represented by experienced counsel.

### C. <u>The Proposed Settlement Class Should Be Certified Under Rule 23(b)(3).</u>

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Predominance

Common questions predominate over questions impacting only individual members here. As set forth *supra* § III.B.2, questions common to all Settlement Class Members include the following:

a. Whether Defendants unlawfully withheld interest on their financial gains made on Late Fees that they assessed in violation of the Maryland Insurance Article § 27-216(b)(3)(i) and (b)(3)(ii)(2);

b. Whether Defendants were unjustly enriched by their improper conduct;

c. Whether Defendants should not have been permitted to retain the interest and financial gains made on the Late Fees;

d. Whether Defendants withheld information from members related to the violation, preventing putative Class Members from being aware they are owed money;

e. Whether Defendants refunded Plaintiffs and members of the putative Class the interest accrued on or the financial gains made on the unlawfully collected Late Fees; and

f. Whether the Defendants are liable for restitution and the amount of such damages and/or restitution.

These questions can be resolved using the same evidence for all class members, and are exactly the kind of predominant common issues that make class certification appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . ." (citation and internal quotation marks omitted). Predominance is satisfied here.

**2. Superiority**

**Superiority**: Courts consider four facts when determining whether superiority is met: (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. *Jones*, 2019 WL 4141015, at *11. When plaintiffs seek certification of a settlement only class, a court need not consider manageability. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) (holding "[w]hether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."). Plaintiffs can show each of the required factors here.

First, classwide resolution is the *only* practical method to address the alleged violations in Plaintiffs' Amended Complaint. There are over one hundred thousand putative Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal regress. *See Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 478 (D. Md. 2014) (superiority is met where "denial of the settlement will effectively foreclose relief for most class members as the harm each individual suffered will likely not justify the high costs of individual suits.").

Second, Class Counsel is not aware of pending individual litigation against the Defendants regarding the subject matter of Plaintiffs' Amended Complaint. *See* Ex. 2, Joint Declaration of Counsel in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Dec."). at ¶ 11.

Third, concentrating the resolution of this case in one forum is desirable because "resolution of this case through class action settlement will achieve significant economies for the parties, the proposed [Settlement Class], and the [C]ourt." *See Decohen*, 299 F.R.D. at 478.

### D. <u>The Settlement Agreement Should Be Preliminarily Approved By the Court</u>

"The voluntary resolution of litigation through settlement is strongly favored by the courts." *S.C. Nat. Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (citing *Williams v. First Nat. Bank*, 216 U.S. 582 (1910)) "This policy is particularly appropriate than in class actions: In the class action context in particular, 'there is an overriding public interest in favor of settlement' settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *S.C. Nat. Bank*, 749 F. Supp. at 1423 (internal quotations and citation omitted). "Whether to preliminarily approve a proposed class action settlement lies within the sound discretion of the district court." *Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL

1062024, at *2 (D. Md. Apr. 8, 2022) (citation omitted). Here, as discussed more fully below, the proposed Settlement Agreement is well within the range of reasonableness, comports with Rule 23 and due process considerations, and thus, should be preliminarily approved by the Court.

### E. Standards and Procedures for Preliminary Approval

Under Fed. R. Civ. P. 23, the Court is to direct notice of a proposed settlement if it seems "likely" that it would give final approval of the settlement. Fed. R. Civ. P. 23(e)(1)(B). Hence, at the preliminary approval stage, the Court is required to assess whether there is "'probable cause' to submit the proposal to members of the class and to hold a full-scale hearing on its fairness." *In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at *3 (quoting *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). There must be a "basic showing" that the proposed settlement "is sufficiently within the range of reasonableness so that notice should be given." *Id.* (internal quotation marks and ellipsis omitted). The court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* (quoting *Manual for Complex Litig. (Fourth)*, §21.632 (2004)).

There are two primary prongs to the preliminary assessment of a class action settlement: fairness and adequacy. *Id.* The fairness prong focuses on the procedural propriety of the proposed settlement, while the adequacy prong focuses on "substantive propriety." *Id.*

#### 1. The Settlement Satisfies the Fairness Prong for Preliminary Approval

Courts consider the following factors in assessing the procedural fairness of the proposed settlement:

a. whether the proposed settlement is the product of good faith bargaining at arm's length;

b. the posture of the case at settlement;

c. the extent and sufficiency of discovery conducted;

d. counsel's experience with similar litigation and their relevant qualifications; and

e. any pertinent circumstances surrounding the negotiations.

*Id.* These factors support preliminary approval here.

**a. Negotiations Occurred at Arm's Length by Experienced Counsel**

The Settlement was the result of extensive arm's length negotiations, conducted before a mediator and by experienced counsel for all the parties, along with specific discovery and contentious litigation. The parties' negotiations included a full day of mediation on November 7, 2024, facilitated by an experienced mediator, and the exchange of information. Following the full day mediation, the parties agreed to and continued communicating with the mediator to work toward resolution. The Parties continued to discuss the prospect of settlement, communicating at times directly and through Judge Legg on numerous occasions over many months. The Parties ultimately agreed to the mediator's proposal on key settlement terms on June 3, 2025. A presumption of fairness exists where parties negotiate at arm's length with the assistance of a mediator. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 830 (E.D.N.C. 1994); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB-16-3025, 2019 WL 3183651, at *5 (D. Md. July 15, 2019) ("reliance on a neutral mediator experienced in complex litigation [or a court-affiliated mediator], indicate the Settlement is fair and that it should be approved").

Through the course of negotiations, Class Members were represented by attorneys who have considerable experience and success in prosecuting and settling class actions, have been vigorously prosecuting this and other cases for similar claims for several years, and therefore, were well versed in the issues and how to evaluate the claims. Defendants were similarly represented

by counsel experienced in class action litigation. Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See*, *e.g.*, *In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at *4 (noting satisfaction with plaintiffs counsel who "are affiliated with well-regarded law firms with strong experience[,]" weighed toward finding proposed settlement was not the product of procedural impropriety); *Decohen*, 299 F.R.D. at 480 (where class counsel had "significant litigation . . . experience", including "in successful consumer rights class actions" their attestation to the fairness of the settlement proposal weighed toward finding that the settlement was fair); *Devine v. City of Hampton, Va*,, No. 4:14CV81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015) ("Counsel believe the settlement is fair and reasonable, and although the court is not bound by counsel's opinion, it is nonetheless entitled to great weight.") (cleaned up, citation and punctuation omitted); *Muhammad v. Nat'l City Mortg., Inc.,* No. CIV.A. 2:07-0423, 2008 WL 5377783, at *4 (S.D.W. Va. Dec. 19, 2008) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.") (quoting *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000)); *Brunson v. Louisiana-Pacific Corp.*, 818 F.Supp.2d 922, 927 (D.S.C. 2011) ("Class Counsel's support for the Settlement as being fair, reasonable and adequate, and in the best interests of the class Members as a whole, is entitled to significant weight."); *Gaston v. LexisNexis Risk Sols. Inc.*, No. 516CV00009KDBDCK, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021) ("The opinion of experienced and informed counsel in favor of settlement should be afforded due consideration in determining whether a class settlement is fair and adequate."); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("[T]he opinion and recommendation of experienced counsel should be given weight in evaluating the proposed settlement."); *Gagliastre v. Capt.*

*George's Seafood Res., LP*, No. 2:17CV379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019) ("(C)ounsel has experience in federal court and employment litigation. As a result, their opinion is entitled to weight.'); *All. To End Repression v. City of Chi.*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, proposed Lead Class Counsel—three law firms with nationwide class action litigation experience and have made a considered judgment based on adequate information derived from meaningful discovery that the Settlement is not only fair and reasonable, but a favorable result for the Class. Class Counsel's beliefs are based on their deep familiarity with the factual and legal issues in this case and the risks associated with continued litigation. This further weighs in favor of the fairness of the settlement. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:41 (4th ed. 2010) (noting that courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval").

**b. There Has Been Sufficient Discovery At This Posture**

The posture of the case and the time of settlement demonstrate that the proposed Settlement was agreed in the absence of collusion, and that Parties and counsel were well informed. Indeed, the Parties litigated this case for over four years before reaching the Settlement. *Decohen*, 299 F.R.D. at 480 (certification for settlement purposes was proper prior to moving for class certification was proper where the case had been litigated for several years); *see also* § II.B-D *supra*, Joint Dec. at ¶¶ 2-7. Proposed Class Counsel obtained sufficient discovery to enter into the proposed Settlement on a fully informed basis. Following the Court's denial of Defendants' Motion to Dismiss, from July 18, 2024, through June 3, 2025, the Parties engaged in substantial discovery efforts, including the exchange of written discovery responses and substantial document discovery. Plaintiffs also took the depositions of several of Defendants' witnesses. In addition, the

parties obtained expert opinion and evaluation in preparation for a mediation session which was beneficial to understanding the potential outcomes of the case. While informal discovery is sufficient for preliminary approval, the Parties here have engaged in significant, formal discovery. *Alexander*, 1:20-cv-02369-RDB Dkt 67, at 10 (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)).

Based on this discovery, Class Counsel gained an understanding of both the strengths and weaknesses of Plaintiffs' claims. Because liability in this case is still fiercely contested both sides would face considerable risks were the litigation to proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial, recovery for the Settlement Class.

**c. The Proponents of the Settlement Are Experienced in Similar Litigation**

As set forth in detail *supra* § III.B.4 (collecting cases regarding Class Counsel's experience) and § III.E.1.a, in the Joint Dec., proposed Class Counsel are highly experienced and skilled in handling complex class actions and class actions challenging improper business practices. Proposed Class Counsel have successfully obtained meaningful recoveries for consumers through class litigation. Accordingly, this factor strongly supports granting preliminary approval.

Plaintiffs have met the fairness requirements for preliminary approval of the proposed Settlement. Namely, the Settlement was negotiated at arm's length by counsel highly experienced in similar litigation and following sufficient discovery. Thus, this Court should grant preliminary approval so the proposed Class may be certified for Settlement purposes, Class Counsel may be appointed, and the Class Notice may be mailed. Once the Class Notice process is complete, the

Court can then fully and finally evaluate the fairness and adequacy of the Settlement at a Final Approval hearing.

### 2. The Settlement Satisfies the Adequacy Prong for Preliminary Approval

Courts consider the following factors in assessing the substantive adequacy of the proposed settlement:

> [1] the relative strength [and weaknesses] of the plaintiffs' case on the merits…; [2] the cost of additional litigation; [3] defendants' ability to pay a judgment; and [4] any opposition to the settlement

*In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at *3 (internal quotation marks and citations omitted). These factors also support preliminary approval of the proposed Settlement.

#### a. The Strengths and Weaknesses of Plaintiffs' Case Support Approval

As discussed above, even with the benefit of substantial discovery, liability in this case is contested, and both sides would face considerable risks were the litigation to proceed. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial, recovery for the Settlement Class.

Plaintiffs faced a risk that they would be unable to certify a class or establish the Defendants' liability, and, if able to do so, they faced the further risk that a trier of fact would find no damages or damages that were less than the $5 million achieved by means of the Settlement. Even if Plaintiffs were successful, without settlement, any recovery by the proposed Settlement Class would be delayed many months, if not years from now. In light of these risks, Plaintiffs and their counsel believe the Settlement represents a favorable outcome for the Settlement Class. The Settlement will avoid the cost and expense of continued litigation and will achieve immediate relief for the Settlement Class.

The proposed Settlement is reasonable and confers a substantial benefit on the Settlement Class, particularly given the inherent risks of continued litigation. *See Decohen*, 299 F.R.D. at 480 (where the defendant contested liability and "if the Settlement Agreement is terminated, the parties agree to return to their pre-settlement litigation positions . . . even after three and a half years of litigation, the road to recovery—particularly for the class as a whole—likely would be protracted and costly if the settlement were not approved.").

**b. The Cost of Additional Litigation Supports Preliminary Approval**

The costs of class certification briefing, summary judgment briefing, and a trial itself would have been expensive. Costs include time spent briefing the motions, as well as weeks of preparation and trial time for multiple attorneys and their staff, preparation of evidentiary exhibits, creation of demonstrative exhibits, and preparation, travel, and trial time for the experts on each side. Avoiding the cost and expense of a lengthy trial and a likely appeal—which might well have resulted in a judgment adverse to, and with no relief awarded to, the Class—also supports preliminary approval.

**c. Other Factors**

Other factors noted by courts are not material in this case and/or at this stage. Defendants are large financial institutions and are obviously able to pay any judgment. Class Notice has not yet been issued, so it is not known whether there will be objections to the proposed settlement.

**F. <u>The Court Should Appoint Plaintiffs' Counsel as Class Counsel</u>**

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court "must" consider:

a. the work counsel has done in identifying or investigating potential claims in the action;

b. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

c. counsel's knowledge of the applicable law; and

d. the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel, Kagan Stern Marinello & Beard LLC, Timoney Knox, LLP, and Tycko & Zavareei LLP, satisfy these criteria. These firms' lawyers, along with their co-counsel, expended a great deal of time, effort and expense investigating the Defendants' documents, practices, and actions prior to and since filing this action. Further, as set forth in the declaration submitted herewith, proposed Class Counsel are highly experienced in challenging improper business practices through class action litigation. *See* Joint Dec. at ¶¶ 12-38. It is clear from proposed Class Counsel's track records of success that they are highly skilled and knowledgeable concerning class action practice.

As can be seen by their commitment to prosecuting this case thus far as well as their track record, Class Counsel have made the investment and have the experience to represent the Class vigorously. Accordingly, the appointment of the proposed Class Counsel under Rule 23(g) is warranted.

### G. <u>The Proposed Class Notice Program Should Be Approved</u>

Under the Settlement Agreement, the Settlement Administrator will send individualized Class Notices in three different ways: (a) Email Notice to Current and Former Policyholders for whom Defendants have email addresses; (b) Postcard Notice to those Former Policyholders for whom Defendants do not have email addresses and for those who have not agreed to electronic transactions with Defendants, or for which the Email Notice is returned undeliverable; and (c)

Long Form Notice with greater detail than the Email Notice and Postcard Notice, which shall be available on the Settlement Website and/or via mail upon request by an Settlement Class Member. Not all Settlement Class Members will receive all three forms of Notice, as detailed herein.

Courts have considerable discretion in approving an appropriate notice plan. *See Manual for Complex Litig.* § 21.311 ("Determination of whether a given notification is reasonable under the circumstances of the case is discretionary."). The manner in which these Class Notices are disseminated, as well as their content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and procedural due process. *See Alexander*, 1:20-cv-023969-RDB, Dkt. 56 at 17-18 (approving notice plan as comporting with due process, Rule 23(c)(2), and Rule 23(e) and collecting cases); *McAdams*, 26 F.4th at 157-58 (discussing due process requirements and Rule 23(e) notice requirements); *Decohen*, 299 F.R.D. at 478-79 (discussing Rule 23(c)(2) and Rule 23(e) notice requirements for final approval); *Zimmer Paper Prod., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90–91 (3d Cir. 1985); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006). These requirements are satisfied here.

As set forth in the proposed Preliminary Approval Order, the Parties and the Settlement Administrator will cause the Settlement Class to be notified of the pendency of the Action and the proposed Settlement by mailing and emailing the Settlement Notice to all Members of the Settlement Class identified by Defendants based on their records. The Settlement Administrator will also establish a website related to the Settlement in this case and the Notice shall be featured on it. This procedure is designed to reach as many Members of the Settlement Class as reasonably practicable. The Settlement Notice informs the Settlement Class of the nature of the action, the Settlement Class definition, a detailed summary of the terms of the Settlement (including the relief provided and the scope of the Release), the binding nature of the Settlement on Members of the

Settlement Class, and the intent of Class Counsel to seek an award of attorney's fees and reimbursement for their litigation expenses. It also informs Settlement Class Members how and when to opt out of the Settlement, and how and when to file objections to the proposed Settlement, the motion for attorney's fees and expenses, and/or the request for Plaintiff Service Awards, and will state the date, time and place of the Final Approval hearing.

The form and manner of providing notice to the Settlement Class satisfies all the requirements of Rule 23 and due process. A settlement must provide adequate notice to the Settlement Class so that each Member can make an informed choice about whether to object or participate without objection. Rule 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1). To satisfy due process, the notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014) (citation omitted) (due process does not require that each person affected by judicial action actually receive notice of a proposed settlement, but does require that "a serious effort" be made to inform interested parties.); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.")

The notice program set forth in the proposed Preliminary Approval Order meets these standards: it provides the best practicable notice under the circumstances and is reasonably calculated to reach substantially all members of the Class. Settlement Notices will be directly mailed and emailed to all Members of the Settlement Class identified from Defendants' records

and that mailing will be supplemented by publication on the Settlement Website. The Proposed Class Notice is clear, accurate, and satisfies due process.

Accordingly, the proposed Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. *See*, *e.g.*, 4 Newberg on Class Actions (Fourth) §§ 8.21, 8.39; *Manual for Complex Litig.* (Fourth) §§ 21.311-21.312. The proposed Class Notice should be approved for dissemination to the Class Members.

In addition, Plaintiffs request that the Court approve JND Legal Administration ("JND"), who has been selected by the Parties to administer this Settlement, and has extensive experience administering class action settlements, as Settlement Administrator. JND was named the #1 Class Action Claims Administrator in the U.S. by the national legal community for multiple consecutive years and has administered hundreds of class action settlements, including the Blue Cross Blue Shield antitrust settlement (over eight million claims processed), the Equifax Data Breach settlement (over 18 million claims processed), and the GM Ignition Switch settlement (over 1.5 million claims processed). *See* Ex. 3 Declaration of JND Legal Administration in Support of Plaintiffs' Motion for Preliminary Approval ("Administrator Dec.").

### H. <u>Proposed Schedule of Events</u>

The schedule of events under the terms of the Settlement Agreement and proposed Preliminary Approval Order is set forth in the table below:

| EVENT | DATE | SETTLEMENT AGREEMENT OR ORDER IF APPLICABLE |
|---|---|---|
| Entry of Preliminary Approval Order | To be determined by Court | n/a |

| | | |
|---|---|---|
| Defendants to provide supplemented Consent Order File to the Settlement Administrator | DATE | *See* ¶ 74 |
| Defendant to deposit Settlement Funds into the Escrow Account | Within 10 business days of the entry of the Preliminary Approval Order | *See* ¶ 69 |
| Mailing/Emailing of Notice to the Settlement Class | As soon as practicable after Preliminary Approval of the Settlement | *See* ¶ 78 |
| Settlement Administrator to complete Notice Program, including running address traces and re-mailing. | No later than 60 days before the original date set for the Final Approval Hearing | *See* ¶ 94 |
| Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and Plaintiffs' Application for Service Awards | 45 days before the original date set for the Final Approval Hearing | *See* ¶ 119 |
| Plaintiffs' Motion for Final Approval | 45 days before the original date set for the Final Approval Hearing | *See* ¶ 101 |
| Deadline for Settlement Class Members to Object or Opt Out | 30 calendar days prior to the Final Fairness Hearing | *See* ¶¶ 44, 45 |
| Deadline for Settlement Class Members to Request to Appear at Final Fairness Hearing | 30 days before Final Fairness Hearing | *See* ¶ 99(k) |
| Settlement Administrator to provide summary report of Notice Program. | 3 days before Final Fairness Hearing | *See* ¶ 96 |
| Final Approval Hearing | To be determined by Court (at least 120 days from grant of Preliminary Approval) | |

## I. A Final Approval Hearing Should Be Scheduled

Class Counsel further moves the Court to schedule a Final Approval Hearing, as contemplated by Rule 23, to determine that final approval of the Settlement is warranted and proper. *See* Fed. R. Civ. P. 23. Such hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy, and reasonableness of the Settlement Agreement. Additionally, Class Counsel will present their application for their fees and reasonable expenses pursuant to Rule 23(h), as well as the Plaintiffs' Service Awards. To ensure ample time for Class Notice to be mailed and considered by Class Members, the Court should schedule such hearing for a date at least one hundred and twenty (120) days from the date the Court enters an Order granting preliminary approval.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion and enter the proposed Preliminary Approval Order.

Dated: September 16, 2025

Respectfully submitted,

*/s/Jonathan P. Kagan*

Jonathan P. Kagan (Bar No. 23181)
Meagan C. Borgerson (Bar No. 13686)
**KAGAN STERN MARINELLO & BEARD, LLC**
238 West Street
Annapolis, MD 21401
Phone: (410) 216-7900
Facsimile: (410) 705-0836
Email: kagan@kaganstern.com
Email: borgerson@kaganstern.com

Keith T. Vernon*
**TIMONEY KNOX, LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
Phone: (202) 349-9864
Email: kvernon@timoneyknox.com

Andrew W. Knox*
Kathleen M. Vermilion*
**TIMONEY KNOX, LLP**
400 Maryland Drive
Fort Washington, PA 19034
Phone: (215) 646-6000
Facsimile: (215) 591-8246
Email: aknox@timoneyknox.com
Email: kvermilion@timoneyknox.com

Andrea R. Gold (Bar No. 18656)
Gemma Seidita*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW
Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
Facsimile: (202) 973-0950
Email: agold@tzlegal.com
Email: gseidita@tzlegal.com

Jonathan Shub*
**SHUB JOHNS & HOLBROOK, LLP**
Four Tower Bridge
200 Bar Harbor Dr., Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
Email: jshub@shublawyers.com

Karen M. Kohn (Bar No. 12846)
**THE KOHN LAW GROUP, PLLC**
1717 K Street, NW, Suite 900
Washington, D.C. 20006
Phone: (202) 465-8686
Facsimile: (202) 871-7394
Email: karen@thekohnlawgroup.com

**Admitted Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2025, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/Jonathan P. Kagan*
Jonathan P. Kagan