**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WALTER BLACK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 21-cv-1581-LKG |
| ) | |
| v. ) | Dated:  April 29, 2026 |
| ) | |
| USAA GENERAL INDEMNITY ) | |
| COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER ON THE PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

On March 16, 2026, the Plaintiffs in this class action matter, Walter Black III, Keith Barr, Wayne Best and David Fant, Sr., filed an unopposed motion for final approval of class action settlement to resolve their claims against the Defendants in this case, United Services Automobile Association ("USAA"), USAA General Indemnity Company ("USAA General"), Garrison Property and Casualty Insurance Company ("Garrison") and USAA Casualty Insurance Company ("USSA Casualty").  *See* ECF No. 114.  The Plaintiffs have also filed a motion for award of attorneys' fees, costs and service awards to the named Plaintiffs in the case.  ECF No. 115.  The Court held a hearing on these motions on April 28, 2026.  ECF No. 121.  For the reasons that follow, the Court: (1) **GRANTS** the Plaintiffs' unopposed motion for final approval of class action settlement (ECF No. 114); (2) **APPROVES** the parties' Settlement Agreement; (3) **GRANTS-in-PART** the Plaintiffs' motion for award of attorneys' fees, costs and service awards (ECF No. 115); and (4) **AWARDS** Plaintiff Walter Black III a service award in the amount of **$7,500.00** and Plaintiffs Keith Barr, Wayne Best and David Fant, Sr. a service award in the amount of **3,500.00,** respectively.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

Case Background

In this class action matter, the Plaintiffs allege that the Defendants illegally collected certain late fees from more than 127,000 Maryland insurance policyholders, including the Plaintiffs, during the period June 27, 2011, and September 30, 2019, in violation of Maryland Insurance Code § 27-216(b)(3)(i) and (b)(3)(ii)(2). *See* ECF No. 86.  The Plaintiffs seek to recover the gains, profits, interest and/or otherwise increased value of these wrongly assessed late fees, which they contend the Defendants improperly obtained from their policyholders. *Id*. And so, the Plaintiffs assert the following two claims against the Defendants in the amended complaint: (1) money had and received (Count I) and (2) unjust enrichment (Count II). *Id*. at ¶¶ 80-96.

The named Plaintiffs, Walter Black III, Keith Barr, Wayne Best and David Fant, are the Defendants' current or former policyholders and residents of the state of Maryland.  ECF No. 86 at ¶¶ 15, 19, 24 and 29.

Defendant USAA is a reciprocal interinsurance exchange with its principal place of business located in San Antonio, Texas. *Id*. at ¶ 34.  The remaining Defendants, USAA General, Garrison and USAA Casualty, are insurance companies that are subsidiaries of USAA, and their principal place of business is located in San Antonio, Texas. *Id*. at ¶¶ 35, 36 and 37.

As background, on June 25, 2021, Plaintiff Walter Black III filed this class action matter against the Defendants, on behalf of himself and others similarly situated.  ECF No. 1.  In the amended complaint, the Plaintiffs allege that they and the members of the class are entitled to millions of dollars in gains, profits, and/or otherwise increased funds that the Defendants earned through the illegal collection of their monies. *See* ECF No. 86.

Specifically, the Plaintiffs allege that the Defendants illegally collected late fees from more

---

[1] The facts recited herein are taken from the amended complaint; the Plaintiffs' consent motion for preliminary approval of the settlement and the memorandum of law and exhibits in support thereof; the Plaintiffs' unopposed motion for final approval of class action settlement and the memorandum of law and exhibits in support thereof; the Plaintiffs' motion for award of attorney's fees, costs and service awards; and the Plaintiffs' notice of program summary report regarding objections and opt-outs.  ECF Nos. 86, 110, 110-1, 110-2, 110-3, 114, 114-2, 114-4, 115, 115-1, 115-2, 115-3, 115-4, 115-5 and 120. Unless otherwise stated, the facts recited herein are undisputed.

than 127,000 Maryland policyholders during the period June 27, 2011, and September 30, 2019, in violation of Maryland Insurance Code § 27-216(b)(3)(i) and (b)(3)(ii)(2). *Id.* In this regard, the Plaintiffs allege that the Defendants are interrelated insurance entities, and that Defendant USAA is a reciprocal interinsurance exchange who receives insurance applications from military service members, veterans, or their families and then determines whether it or one of its subsidiaries, including Defendant USAA GIC, Garrison, or USAA-CIC, will underwrite the policy. *See id.* at ¶¶ 4 and 34-38.

In 2018, a USAA member filed a consumer complaint against the Defendants with the Maryland Insurance Administration ("MIA") about an unrelated matter. *Id.* at ¶ 50. During the investigation of the complaint, the MIA investigated the Defendants' alleged violation of the Maryland Insurance Article and found that the Defendants had improperly assessed late fees on their policyholders. *Id.* at ¶¶ 50-51. And so, the MIA concluded that the Defendants had improperly collected millions of dollars in late fees from their policyholders, during the period June 2011 and September 2019. *Id.* at ¶ 93.

In March of 2020, the Defendants refunded these late fees to their policyholders, including the Plaintiffs. *Id.* at ¶ 59. But the Defendants did not return to their policyholders the gains, profits, interest and/or otherwise increased value of the wrongly assessed late fees. *Id.* at ¶¶ 18, 22, 26, 32 and 59-68. In July of 2020, the Defendants and the MIA entered into a final consent order (the "Consent Order"), which documented the MIA investigation, internal audit, and refunds issued to the Defendants' policyholders. *Id.* at ¶ 55.

In the amended complaint, the Plaintiffs contend that the Defendants did not have a legal or equitable basis to retain the gains from their improperly assed late fees. *Id.* at ¶ 9. Given this, the Plaintiffs also contend that it would be unequitable for the Defendants to retain the interest, other financial gains, and/or monies to which they had no right at law or equity and that the Defendants have been unjustly enriched by retaining these funds. *Id.* at ¶¶ 80-96. And so, the Plaintiffs seek, among other things, an award of restitution for all funds acquired and subsequently earned "from the Defendants' unlawful collection of late fees." *Id*. at Prayer for Relief.

Prior to reaching a settlement, the parties litigated this case for several years and engaged in formal mediation. During the pendency of the case, the parties briefed three motions to dismiss and engaged in formal discovery from July 18, 2024, to June 3, 2025. ECF No. 114-1 at

16.  This discovery included the exchange of written discovery, substantial document productions, and the depositions of several witnesses.  *Id.*

The parties also participated in a formal mediation before the Honorable Benson E. Legg on November 7, 2024.  *Id.* at 7.  Following the mediation, the parties continued to communicate with Judge Legg to work toward a resolution of this dispute, including presenting supplemental briefing and additional materials.  *Id.*  To that end, the parties agreed to Judge Legg's proposal on key settlement terms on June 3, 2025.  *Id.*

<u>The Settlement Agreement</u>

The parties have entered into a settlement agreement and release (the "Settlement Agreement") to resolve the Plaintiffs' claims.  ECF Nos. 110-1 and 114-2.  The key provisions of the Settlement Agreement are summarized below.

First, the Settlement Agreement  defines the "Settlement Class" in this case as follows:

> All individuals who, per the Consent Order, received late fee refunds.
>
> Excluded from the class are the Honorable Lydia Kay Griggsby, any and all court staff who would otherwise qualify as putative class members, Plaintiffs' Counsel who would otherwise qualify as putative class members, and Defendants' Counsel who would otherwise qualify as putative class members.

ECF No. 114-2 at ¶ 60.

Second, Section IV of the Settlement Agreement addresses the Settlement consideration and escrow account and provides that, among other things, the Defendants will deposit $5 million into an escrow account to be used to compensate the Settlement Class Members.  *Id*. at ¶ 69.  The Settlement Agreement also provides that the Defendants will separately pay all administration costs associated with the Settlement.  *Id*.

Third, Section XI of the Settlement Agreement addresses the calculation and disbursement of the Settlement payments to the Plaintiffs and provides that an administrator will be responsible for calculating the amounts payable to the Settlement Class Members.  In this regard, the Settlement Agreement provides that:

> The Settlement Administrator will calculate Settlement Class Member Payments using the Consent Order Files. The Net Settlement Fund shall be paid to the Settlement Class Members as follows. Each Settlement Class Member will be allocated a $5 minimum payment from the Net Settlement Fund. The remaining funds will be allocated proportionately by the amount of interest that the Settlement Class Member would have

received on March 20, 2020, had simple interest been included in the late fee refund at eight (8) percent per annum. In the event information to perform this calculation for any individual Settlement Class Member is unavailable, a calculation will be performed that assumes the amount refunded was charged in a single sum on March 20, 2016 (four years prior to the refund). The following calculation will be used to proportionately allocate the Net Settlement Fund:

(Settlement Class Member's Late Fee Interest / Sum of All Settlement Class Members' Late Fee Interest) X Net Settlement Fund)

Fractions of a penny that are .5 or higher shall be rounded up and fractions of a penny that are .4 or lower shall be rounded down. Under no circumstances may Settlement Class Member Payments exceed the Net Settlement Fund. Nothing herein precludes Class Counsel and Defendants' Counsel from working together to perform the calculations required herein and providing such file to the Administrator.

The Parties agree the foregoing payment allocation formula is exclusively for purposes of computing, in a reasonable and efficient fashion, the amount each Settlement Class Member should receive from the Net Settlement Fund. The fact that this payment allocation formula will be used is not intended and shall not be used for any other purpose or objective whatsoever.

Within 15 days after the Effective Date, the Settlement Administrator shall provide to Defendants' Counsel and Class Counsel two lists. The first list shall include the amount of Settlement Class Member Payments owed to each Current Policyholder. The second list shall include the amount of Settlement Member Payments owed to each Former Policyholder.

*Id*. at ¶¶ 103-105.  The Settlement Agreement also provides that the Settlement Administrator shall distribute the Net Settlement Fund to Settlement Class Members, as follows:

Settlement Class Member Payments to Current Policyholders shall be made by a credit to those Policyholders' Accounts maintained individually at the time of the credit. The Settlement Administrator shall transfer the funds necessary for Defendants to make these credits no later than 30 days after the Effective Date. Defendants shall notify Current Policyholders of any such credit on the statement on which the credit is reflected by stating "Late Fee Litigation Credit" or something similar. Defendants will bear any costs associated with implementing the credits and notification required by this paragraph. If by the deadline for Defendants to apply credits of Settlement Class Member Payments to the statements Defendants are unable to complete certain credits, or

5

it is not feasible or reasonable to make the payment by a credit, Defendants shall deliver the total amount of such unsuccessful Settlement Class Member Payment credits to the Settlement Administrator to be paid by check in accordance with subparagraph b. below.

Settlement Fund Payments to Former Policyholders will be made by check with an appropriate legend, in a form approved by Class Counsel and Defendants' Counsel, to indicate that it is from the Settlement Fund. Checks will be cut and mailed by the Settlement Administrator and will be sent to the addresses that the Settlement Administrator reasonably believes is valid. Checks initially sent shall be valid for 180 days. Reissued checks shall be valid for 60 days. Checks will be made payable to the same person or estate as was used for late fee refunds per the Consent Order Files unless agreed otherwise by counsel for Plaintiffs and Defendants given the facts and circumstances of a particular request. The Settlement Administrator will make reasonable efforts to locate the current address for any intended recipient of Settlement Funds whose check is returned by the Postal Service as undeliverable (such as by running addresses of returned checks through the Lexis/Nexis database that can be utilized for such purpose), and will remail it once if an updated address is located. In the event of any complications arising in connection with the issuance or cashing of a check, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel . . . .

*Id*. at ¶ 106.

Fourth, Section XIII of the Settlement Agreement contains a release provision, which provides that:

As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from the Released Claims.

Each Settlement Class Member is barred and permanently enjoined from bringing on behalf of themselves, or through any person purporting to act on their behalf or purporting to assert a claim under or through them, any of the Released Claims against the Released Parties in any forum, action, or proceeding of any kind.

Plaintiffs or any Settlement Class Member may hereafter discover facts . . . with respect to the subject matter of the Released Claims, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or

unsuspected, asserted or unasserted, liquidated or unliquidated, and contingent or non-contingent claims with respect to all of the matters described in or subsumed by herein.

Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be released . . . .

In addition to the releases made by Plaintiffs and Settlement Class Members above, Plaintiffs, including each and every one of their agents, representatives, attorneys, heirs, assigns, or any other person acting on their behalf or for their benefit, and any person claiming through them, makes the additional following general release of all claims, known or unknown, in exchange and consideration of the Settlement set forth in this Agreement: This named Plaintiff agrees to a general release of the Released Parties from all claims, demands, rights, liabilities, grievances, demands for arbitration, and causes of action of every nature and description whatsoever, known or unknown, pending or threatened, asserted or that might have been asserted, whether brought in tort or in contract, whether under state or federal or local law.

*Id*. at ¶¶ 110-113.

Fifth, Section IX of the Settlement Agreement addresses the parties' Notice Plan and provides that:

Notice shall be provided to Settlement Class Members in three different ways: (a) Email Notice to Current and Former Policyholders for whom Defendants have email addresses; (b) Postcard Notice to those Current and Former Policyholders for whom Defendants do not have email addresses and for those who have not agreed to electronic transactions with Defendants, or for which the Email Notice is returned undeliverable; and (c) Long Form Notice with greater detail than the Email Notice and Postcard Notice, which shall be available on the Settlement Website and/or via mail upon request by a Settlement Class Member to the Settlement Administrator. Not all Settlement Class Members will receive all three forms of Notice, as detailed herein.

*Id*. at ¶ 89.

The Notice shall include, among other information: a description of the material terms of the Settlement; a deadline by which Settlement Class Members may opt-out of the Settlement Class; a deadline by which Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing, location, date, and time; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. Class Counsel and

> Defendants shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order.

*Id.* at ¶ 91. And so, the proposed Notice describes the procedure for objecting to the Settlement Agreement and states the date, time and place of the Final Approval Hearing.[2] *See id.* at ¶¶ 93 and 98-100.

Lastly, Section XIV of the Settlement Agreement addresses the payment of attorney's fees, litigation costs and service awards and provides, in relevant part, that:

> Class Counsel shall be entitled to request an award of reasonable attorneys' fees and request reimbursement of reasonable litigation costs, to be determined by the Court. Any award of attorneys' fees and costs to Class Counsel shall be payable solely out of the Settlement Fund and together with the Service Awards discussed below shall not exceed $2 million, resulting in at least $3 million of the Settlement Fund being distributed as Settlement Class Member Payments.
>
> Class Counsel shall be entitled to request the Court to approve a Service Award to each Settlement Class Representative as follows: to Plaintiff Walter Black in an amount up to $7,500.00, and to Plaintiffs Keith Barr, Wayne Best, and David Fant Sr. in an amount up to $3,500.00. The Service Awards shall be paid by the Settlement Administrator to the Settlement Class Representative within 10 days of the Effective Date. The Service Awards shall be paid to the Settlement Class Representatives in addition to their Settlement Class Member Payment. The Parties agree the Court's failure to approve a Service Award, in whole or in part, shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination.

*Id.* at ¶¶ 114 and 118.

<u>The Notice Plan</u>

Beginning on January 20, 2026, the Settlement Administrator e-mailed the Court-approved Notice in this case to the e-mail addresses that the Defendants had on file for the Settlement Class Members, pursuant to the parties' Court-approved Notice Plan. ECF No. 120

---

[2] The Settlement Agreement also provides that the Settlement Website is located at www.usaalatefeelitigation.com and includes, among other things, hyperlinked access to the Settlement Agreement, the Long Form Notice, the Preliminary Approval Order, the Final Approval Order, the Final Judgment and that these documents shall remain on the Settlement Website at least until Final Approval. ECF No. 114-2 at ¶ 66.

at ¶ 2; ECF No. 114-5.  A total of 65,042 Notices were sent and, of these Notices, 1,928 were found to be undeliverable.  ECF No. 114-5 at ¶ 9.

On January 20, 2026, the Settlement Administrator mailed the Court-approved Postcard Notice to the last known mailing addresses of each Settlement Class Member that the Defendants have on file.  A total of 64,128 Notices were mailed; five of the Notices were forwarded and 355 Notices were returned as undeliverable.  *Id.* at ¶¶ 13-14.  And so, as of March 13, 2026, a total of 126,887 of the 127,242 attempted Notices were successfully delivered, resulting in a 99.72% success rate for the Notice Program.[3]  *Id.* at ¶ 15.

The Settlement Administrator also administered a settlement website, which hosts downloadable copies of important case documents, provides answers to frequently asked questions, and includes the contact information of the Settlement Administrator.  ECF No. 120-1 at ¶ 4.

The deadline for Settlement Class Members to opt out of the Settlement Agreement was March 30, 2026.  ECF No. 120 at ¶ 4.  As of April 22, 2026, the Settlement Administrator received five opt-out requests.  *Id.* at ¶¶ 6, 8-13; ECF No. 120-1 at ¶ 9.  None of those opt out requests comply with the Court-approved requirement for opting out of the Settlement Agreement.  ECF No. 120 at ¶¶ 6-13.  During the hearing on the Plaintiffs' motion for final approval, the Court held that one opt-out request, from an individual with the surname Walters, would be honored.  *See* ECF No. 114-5 at Exhibit D.  The remaining four Settlement Class Members who attempted to opt out, Harvey, Kahle, Read and Dowgwillo, will be included in the Settlement Class.  *See id.*; ECF No. 120-1 at Exhibit A.  To date, the Settlement Administrator has not received any objections to the Settlement Agreement.  *Id.* at ¶ 5; ECF No. 120-1 at ¶ 1.  And so, there are no timely objections to the Settlement Agreement and one valid opt-out request.  ECF No. 120 at 1.

The Settlement Payment

Pursuant to the Settlement Agreement, the Defendants have deposited $5 million into an escrow account to be used to compensate the Settlement Class Members.  *Id*. at ¶ 69.  Each Settlement Class Member will be allocated a minimum payment of $5.00 from the Net

---

[3] Pursuant to the Court's Preliminary Approval Order, the Defendants have filed a notice of proof of compliance with the Class Action Fairness Act ("CAFA").  ECF No. 119.

Settlement Fund.  ECF No. 114-2 at ¶ 103.

Any additional amount to be awarded to each Settlement Class Member will be determined by allocating proportionately the amount of interest that the Settlement Class Member would have received on March 20, 2020, had simple interest been included in the late fee refund at eight (8) percent per annum.  *Id.*  The following calculation will be used to proportionately allocate the Net Settlement Fund: (Settlement Class Member's Late Fee Interest / Sum of All Settlement Class Members' Late Fee Interest) X Net Settlement Fund).  *Id.*  In the event information to perform this calculation for any individual Settlement Class Member is unavailable, a calculation will be performed that assumes the amount refunded was charged in a single sum on March 20, 2016.  *Id.*

The payments to the Settlement Class Members will be distributed to the Settlement Class Members who are current policyholders by a credit to their accounts no later than 30 days after the Effective Date of the Settlement Agreement.  *Id.* at ¶ 106.  Payments to former policyholders will be distributed by check and mailed to these individuals no later than 60 days after the Effective Date of the Settlement Agreement.  *Id.*  During the April 28, 2026, hearing, Class Counsel represented to the Court that the payment to each Settlement Class Member will range from approximately $5.04 to $274.90 per Settlement Class Member and that the median payment per Settlement Class Member will be $14.77.

The Plaintiffs' Motion For Attorneys' Fees, Costs and Service Awards

The Plaintiffs have also filed a motion for attorneys' fees, costs and service awards, seeking to recover: (1) attorneys' fees in the amount of **$1,897,980.94** for **4,127.4** hours spent litigating this case; (2) costs in the amount of **$84,019.06**; and (3) service awards in the amount of **$7,500.00** for Plaintiff Black and in the amount of **$3,500.00** for Plaintiffs Barr, Best, and Fant, respectively.  ECF No. 115 at 1.

On December 16, 2025, the Court appointed Jonathan Kagan of Kagan Stern of Marinello & Beard LLC; Keith T. Vernon and Andrew W. Knox of Timoney Knox, LLP; and Andrea R. Gold and Gemma Seidita of Tycko & Zavareei LLP as Class Counsel in this case. *See* ECF No. 113 at 15-16.  The law firm of Kagan Stern of Marinello & Beard LLC is located in Anne Arundel Couty, Maryland.  ECF No. 115-3 at ¶ 21. The law firm of Timoney Knox, LLP is located in Fort Washington, Pennsylvania.  ECF No. 115-2 at Exhibit A.  The law firm of Tycko & Zavareei LLP is located in Washington, DC.  ECF No. 114-4 (Gold Decl.) at Exhibit A.

Mr. Kagan is the managing partner at the law firm of Kagan Stern Marinello & Beard, LLC and he has been practicing law for 32 years and has extensive experience handling complex civil disputes involving financial institutions and insurance companies. *See* ECF No. 110-2 at ¶¶ 32-37.

Mr. Vernon is a partner with Timoney Knox, LLP and he has practiced law for 29 years and he also has substantial experience handling complex civil litigation and class action litigation, including serving as class counsel in several class action matters. *See id*. at ¶¶ 23, 26 and 27. Mr. Knox is also a partner at Timoney Knox, LLP, and he has been practicing law for 15 years and that has been named counsel of record in several class action matters. *See id*. at ¶¶ 28, 29 and 30.

Ms. Gold is the managing partner at Tycko & Zavareei LLP, and she has litigated matters on behalf of consumers injured by unlawful insurance practices and unfair and deceptive business practices for 19 years and has been appointed as class counsel or settlement class counsel in numerous class actions. *Id*. at ¶¶ 12, 15-17. Ms. Seidita is an associate at Tycko & Zavareei LLP, and she has practiced law for six years and she has been named as class counsel in numerous class actions. *Id*. at ¶¶ 19-20 and Exhibit A.

Class Counsel submitted declarations to the Court in support of the motion for attorneys' fees and costs. ECF Nos. 114-4, 115-2 and 115-3. In the declarations, Class Counsel represent that the lawyers with Tycko & Zavareei LLP spent **1,001.20** hours litigating this case and that paralegals with the law firm have spent and additional **82.90** hours supporting this case. ECF No. 114-4 at ¶ 13.[4] Class Counsel also represent that the lawyers with Timoney Knox, LLP spent **2,706.1** hours litigating this case and that the law firm's paralegals spent **38.1** hours supporting this case. ECF No. 115-2 at ¶ 11.[5]

---

[4] The following attorneys and paralegals from Tycko & Zavareei LLP worked on this case: Andrea Gold, a partner who has practiced law since 2004; Gemma Seidita, an associate who has practiced law since 2018; Mallory Morales, an associate who has practiced law since 2018; Em Cooper, an associate who has practiced law since 2023; Robin Bleiweis, an associate who has practiced law since 2024; Lavanya Prabhakar, an associate who has practiced law since 2024; Troy Brown, an associate who has practiced law since 2025; Allegra Lubar, a paralegal; Stephanie Ricker, a paralegal; James Morrison, a paralegal; Alicia Linthicum-Amos, a paralegal; Genna Wolinsky, a paralegal; Emma Bass, a paralegal; Aaron McReynolds, a paralegal; and Adam Cardona, a paralegal. ECF No. 114-4 at ¶ 48.

[5] The following attorneys and paralegals from Timoney Knox, LLP worked on this case: Keith Vernon, a partner who has practiced law since 1996; Scott Wolpert, a partner who has practiced law since 1991; Andrew Knox, an associate who has practiced law since 2009; Kathleen Vermilion, an associate who has

Class Counsel also represent that the lawyers with Kagan Stern Marinello & Beard LLC spent **164.7** hours litigating this case and the law firm's paralegals have spent **1.1** hours supporting this case.  ECF No. 115-3 at ¶ 9.[6]

Lastly, attorneys Karen Kohn of The Kohn Law Group and Jonathan Shub of Shub Johns & Holbrook LLP have submitted declarations stating that they jointly spent **138.0** hours on this case and materially contributed to the Settlement Agreement.  *See* ECF No. 115-4 at ¶¶ 2 and 24; ECF No. 115-5 at ¶¶ 2 and 18.  Karen Kohn is a partner of The Kohn Law Group and he has practiced law since 1994.  ECF No. 115-4 at ¶ 24.  Jonathan Shub is a partner of Shub Johns & Holbrook LLP and he has practiced law since 1988.  ECF No. 115-5 at ¶ 18.

### B. Procedural History

The Plaintiffs commenced this class action matter on June 25, 2021.  ECF No. 1.  On March 24, 2025, the Plaintiffs filed an amended complaint.  ECF No. 86.

On September 16, 2025, the Plaintiffs filed a consent motion for preliminary approval of the settlement, a memorandum in support thereof, and documents related thereto.  ECF Nos. 110, 110-1, 110-2, 110-3 and 110-4.  The Court held a hearing on the Plaintiffs' motion on November 19, 2025, and granted the motion on December 16, 2025.  ECF Nos. 112 and 113.

On March 16, 2026, the Plaintiffs filed an unopposed motion for final approval of class action settlement, a memorandum in support thereof, and documents related thereto.  ECF Nos. 114, 114-1, 114-2, 114-3, 114-4 and 114-5.  On March 16, 2026, the Plaintiffs filed a motion for award of attorneys' fees, costs and service awards, a memorandum in support thereof, and documents related thereto.  ECF Nos. 115, 115-1, 115-2, 115-3, 115-4 and 115-5.

 On April 17, 2026, the Defendants filed a notice of CAFA compliance.  ECF No. 119. On April 22, 2026, the Plaintiffs filed a class notice program summary report regarding objections and opt-outs.  ECF No. 120.  The Court held a fairness hearing on April 28, 2026. ECF No. 121.

---

practiced law since 2016; Chloe Mullen-Wilson, an associate who has practiced law since 2019; Amy Reagan, a paralegal; and an unnamed legal assistant.  ECF No. 115-2 at ¶ 26.

[6] The following attorneys and paralegals from Kagan Stern Marinello & Beard LLC worked on this case: Jonathan Kagan, a partner who has practiced law since 1993; Heather Yeung, an associate who has practiced law since 2011; Meagan Borgerson, an associate who has practiced law since 2013; Veronica Mina, an associate who has practiced law since 2021; and an unnamed paralegal.  ECF No. 115-3 at ¶ 9.

12

### III.    STANDARDS OF DECISION

#### A.  Class Certification

To certify a class for settlement, the Court must confirm that this action comports with Rules 23(a) and (b) of the Federal Rules of Civil Procedure. *Starr v. Credible Behav. Health, Inc.*, No. CV 20-2986 PJM, 2021 WL 2141542, at *3 (D. Md. May 26, 2021) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997)); *see also Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 WL 1625835, at *2 (D. Md. Apr. 25, 2016) ("Where a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).").  In this regard, Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1)   the class is so numerous that joinder of all members is impracticable;
> (2)   there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

To meet the numerosity requirement under Rule 23(a), there must be a showing that the proposed class is so numerous that "joinder of all members is impractical." *Starr*, 2021 WL 2141542, at *3 (quoting Fed. R. Civ. P. 23(a)).  In this regard, the United States Court of Appeals for the Fourth Circuit has held that a class with more than 30 members generally satisfies this requirement. *See id.* (citing *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005)).  The commonality requirement is satisfied when the prospective class members share the same central facts and applicable law. *Id.* (citing *Cuthie v. Fleet Rsrv. Ass'n*, 743 F. Supp. 2d 486, 499 (D. Md. 2010)).

In addition, to meet the typicality requirement, "[t]he claims need not be identical, but the claims or defenses must have arisen from the same course of conduct and must share the same legal theory." *Id.* (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998)).  The Fourth Circuit has also held that a class action is appropriate only when both class

13

representatives and class counsel adequately protect the interests of the class. *Bell v. Brockett*, 922 F.3d 502, 510 (4th Cir. 2019). Give this, "the adequacy-of-representation requirement centers on: (1) class counsel's competency and willingness to prosecute the action and (2) whether any conflict of interest exists between the named parties and the class they represent." *Starr*, 2021 WL 2141542, at *3 (citing *Robinson v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 288 (D. Md. 2008)). And so, "[r]epresentation is adequate if the plaintiffs' attorneys are qualified and able to prosecute the action on behalf of the class." *Id.* (citing *Cuthie*, 743 F.2d at 499).

In addition, Federal Rule of Civil Procedure 23(b)(3) provides that:

> A class action may be maintained if Rule 23(a) is satisfied and if: . . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 26(b)(3). And so, the Court has held that "[w]here the purported class members were subject to the same harm resulting from the defendant's conduct and the 'qualitatively overarching issue' in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied." *Starr*, 2021 WL 2141542, at *4 (citing *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010)).

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, the Court considers the following criteria:

> (1)    the work counsel has done in identifying or investigating potential claims in the action;
> (2)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (3)    counsel's knowledge of the applicable law; and
> (4)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider other matters pertinent to counsel's

14

ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B);

7B Charles Alan Wright, et al., Federal Practice and Procedure §1802.3 (3d ed. 2005).

### B. Approval Of Class Action Settlement

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval, which may issue "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In this regard, Rule 23(e)(2) provides that the Court may find that the Settlement is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

The Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020). To determine a settlement's fairness, the Court considers: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation. *Id.* (citing *Jiffy Lube*, 927 F.2d at 159). "The fairness analysis is intended primarily to ensure that a 'settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *Jiffy Lube*, 927 F.2d at 159).

In assessing the adequacy of the settlement, the Court must consider: (1) the relative

15

strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Lumber Liquidators*, 952 F.3d at 484 (citing *Jiffy Lube*, 927 F.2d at 159). "The most important factors in this analysis are the relative strength of the plaintiffs' claims on the merits and the existence of any difficulties of proof or strong defenses." *Sharp Farms v. Speaks*, 917 F.3d 276, 299 (4th Cir. 2019). The Fourth Circuit has not enumerated factors for assessing reasonableness. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022); *see also Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 769 (D. Md. 2022). But, the Fourth Circuit has "suggested that assessing whether a class settlement is 'reasonable' involves examining the amount of the settlement." *Banner Life Ins. Co.*, 28 F.4th at 527 (quoting *Sharp Farms*, 917 F.3d at 303–04).[7]

## IV.    ANALYSIS

In their unopposed motion for final approval of class action settlement, the Plaintiffs request that the Court: (1) grant final approval of the Settlement Agreement; (2) certify for settlement purposes the proposed Settlement Class; (3) affirm the appointment of the Plaintiffs as Settlement Class Representatives; (4) affirm the attorneys previously appointed in the Preliminary Approval Order as Class Counsel; (5) approve the Defendants' separate payment of Settlement Administration Costs; and (6) enter final judgment dismissing this action and reserving jurisdiction over settlement implementation. ECF No. 114 at 22-23. The Plaintiffs have also moved for award of: (1) attorneys' fees in the amount of **$1,897,980.94**; (2) costs in the amount of **$84,019.06**; and (3) service awards in the amount of **$7,500.00** for Plaintiff Black and in the amount of **$3,500.00** for Plaintiffs Barr, Best, and Fant, respectively. ECF No. 115 at 1. And so, the Plaintiffs request that the Court approve the Settlement Agreement and award the

---

[7] The Fourth Circuit has held that, "[t]o the extent that reasonableness does any work not already performed by one of the other Rule 23(e) (2) requirements, [ ] it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022). In this regard, the Fourth Circuit has "never required [ ] an estimate" of what the class members would have received had they prevailed at trial. *McAdams v. Robinson*, 26 F.4th 149, 160 (4th Cir. 2022). And so, the Court is not required to "decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel," rather "the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness." *Id.* (quotations and citations omitted).

requested attorney's fees, costs and service awards.  ECF No. 114-1 at 22; ECF No. 115-1 at 25.

For the reasons discussed below, the Court is satisfied that Settlement Class and Settlement Agreement comport with the requirements of Fed. R. Civ. P. 23 and that the Settlement Agreement is fair and reasonable.  The Plaintiffs have also shown that the requested service awards are reasonable.  And so, the Court:  (1) **GRANTS** the Plaintiffs' unopposed motion for final approval of class action settlement (ECF No. 114); (2) **APPROVES** the parties' Settlement Agreement; (3) **GRANTS-in-PART** the Plaintiffs' motion for award of attorneys' fees, costs and service awards (ECF No. 115); and (4) **AWARDS** Plaintiff Walter Black III a service award in the amount of **$7,500.00** and Plaintiffs Keith Barr, Wayne Best and David Fant, Sr. a service award in the amount of **3,500.00,** respectively.

### A.  The Court Certifies The Settlement Class

As an initial matter, the Court **CERTIFIES** the Rule 23 Settlement Class in this matter. In determining whether to certify a class, the Court must confirm that this action comports with Rule 23(a) and (b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 23(a)-(b); *see Starr*, 2021 WL 2141542, at *3 (citation omitted); *see also Shaver*, 2016 WL 1625835, at *3 ("Where a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).").  In this regard, Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The Court is satisfied that the requirements of Rule 23(a) have been met in this case for several reasons.  First, the numerosity requirement under Rule 23(a) is satisfied here, because the Plaintiffs have shown that several thousand individuals fall within the Settlement Class. Notably, the Settlement Class includes "[a]ll individuals who, per the Consent Order, received

Late fee refunds" from the Defendants.  ECF No. 110-1 at ¶ 60.  The Plaintiffs represent to the Court that more than 127,000 people received such late fee refunds.  *See* ECF 110-1 at 2; ECF No. 86.  And so, joinder of these many individuals to this case would be impractical.  *See Starr*, 2021 WL 2141542, at *3 (quoting Fed. R. Civ. P. 23(a)).

The commonality requirement is also satisfied here, because the money had and received and unjust enrichment claims in this case arise from the same common nucleus of operative facts related to the Defendants' improper assessment of late fees and raise common questions of law. Notably, the parties agree that the questions of law and fact common to the Settlement Class include:

    a.  Whether the Defendants unlawfully withheld interest on their financial gains made on Late Fees that they assessed in violation of the Maryland Insurance Article § 27- 216(b)(3)(i) and (b)(3)(ii)(2);

    b.  Whether the Defendants were unjustly enriched by their improper conduct;

    c.  Whether the Defendants should not have been permitted to retain the interest and financial gains made on the Late Fees;

    d.  Whether the Defendants withheld information from members related to the violation, preventing the putative Class Members from being aware they are owed money;

    e.  Whether the Defendants refunded the Plaintiffs and members of the putative Class the interest accrued on or the financial gains made on the unlawfully collected Late Fees; and

    f.  Whether the Defendants are liable for restitution and the amount of such damages and/or restitution.

ECF No. 110 at 14.  And so, these common questions of law and fact are capable of being efficiently adjudicated and administered in the same case.

The claims of the named Plaintiffs are also typical of the claims of the Settlement Class Members.  Here, the named Plaintiffs' claims and the Settlement Class Members' claims arise out of the same course of conduct—the Defendants' wrongful assessment and collection of late fees, and refunding only the principal amount of the late fees without any interest and/or financial gains accrued.  *Compare* ECF No. 110-1 *with* ECF No. 86; *see also Starr*, 2021 WL 2141542, at *3 (To meet the typicality requirement, "[t]he claims need not be identical, but the claims or defenses must have arisen from the same course of conduct and must share the same

18

legal theory."). And so, the Plaintiffs have shown that their claims arise out of the same legal theory as those of the Settlement Class Members.

The Court is also satisfied that the named Plaintiffs and proposed Class Counsel have adequately represented the Proposed Settlement Class Members. "[T]he adequacy-of-representation requirement centers on: (1) class counsel's competency and willingness to prosecute the action and (2) whether any conflict of interest exists between the named parties and the class they represent." *Starr*, 2021 WL 2141542, at *3 (citing *Robinson*, 252 F.R.D. at 288). And so, "[r]epresentation is adequate if the [Plaintiffs'] attorneys are qualified and able to prosecute the action on behalf of the class." *Id.*

The Plaintiffs and the Settlement Class Members are represented by qualified and competent Class Counsel, who are experienced in class actions and litigation against financial institutions. ECF No. 114-4 (Gold Decl.) at ¶¶ 5-12; ECF No. 115-1 at 11; ECF No. 115-2 (Vernon Decl.) at ¶¶ 9-10 and 24; ECF No. 115-3 (Kagan Decl.) at ¶¶ 4-8. Ms. Gold has over nineteen years of practice as a plaintiff's class action lawyer. ECF No. 115-1 at 11. Mr. Vernon has nearly 3 decades of legal experience during which he has protected the rights of consumers and individuals in suits, including class actions and mass tort actions. *Id.* at 12. Ms. Kagan has over thirty-two years of experience handling complex litigation matters, especially in Maryland courts. *Id.* And Ms. Gold, Mr. Vernon and Ms. Kagan work for firms (Tycko & Zavareei LLP, Timoney Knox, LLP and Kagan Stern Marinello & Beard, LLC, respectively) that have extensive experience in class actions litigation and litigating against financial institutions. ECF No. 115-1 at 11-12.

Notably, these attorneys have represented the Plaintiffs in this case for more than four years. ECF No. 110 at 28. And so, the adequacy requirement is satisfied in this case.

The Court is also satisfied that there is no conflict of interest between the named Plaintiffs and the proposed Settlement Class Members. The named Plaintiffs in this case, like the Settlement Class Members, were charged improper late fees by the Defendants and received a refund for the amount of the assessed late fees without any interest and/or gains the Defendants made on that money while it was in their possession. *See* ECF No. 86; ECF No. 110 at 24; ECF No. 110-1 at ¶ 60. Given this, the named Plaintiffs have an incentive to maximize the recovery to the Class through this litigation. ECF No. 110 at 24; *see also Bell*, 922 F.3d at 510 (holding that a class action is appropriate only when both class representatives and class counsel

19

adequately protect the interests of the class).  And so, the named Plaintiffs' interests are aligned with the interests of the Settlement Class Members.

As a final matter, the Court is also satisfied that the requirements of Rule 23(b) have been met in this case.  As discussed above, the Plaintiffs have shown that common issues predominate in this case—namely, questions common to all Settlement Class Members arise from the "central claim that [the] Defendants unlawfully and improperly withheld accrued interest or improperly withheld their financial gains made on unlawfully assessed [l]ate [f]ees."  ECF No. 110 at 13; *see also Starr*, 2021 WL 2141542, at *4 ("Where the purported class members were subject to the same harm resulting from the defendant's conduct[,] and the 'qualitatively overarching issue' in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied.").

The Plaintiffs also persuasively argue that a class action is a superior way to litigate this dispute, because: (1) class-wide resolution is the only practical method to address the alleged violations in the amended complaint, given that there are over one hundred thousand putative Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal regress; (2) Class Counsel is not aware of pending individual litigation against the Defendants regarding the subject matter of the amended complaint; and (3) concentrating the resolution of this case in one forum is desirable because resolution of this case through class action settlement will achieve significant economies for the parties, the proposed Settlement Class, and the Court.  ECF No. 110 at 29; ECF No. 110-1 at ¶ 11.  Notably, Class Counsel represented to the Court during the April 28, 2026, hearing that the median recovery of each Settlement Class Member would be $14.77 in this case.  ECF No. 121.  Given this, the Court is satisfied that the individual claims of each Settlement Class Member would be too small to justify individual lawsuits.  And so, the Court agrees with Plaintiffs that a class action would save litigation costs, by permitting the parties to assert their claims and defenses in a single proceeding.  *Gunnells*, 348 F.3d at 426 (class treatment superior where it lowers litigation costs "through the consolidation of recurring common issues").

In sum, the factors set forth in Fed. R. Civ. P 23(b)(3)(A)-(C) weigh in favor of proceeding as a class action in this case.  And so, the Court **CERTIFIES** the Class in this case as follows:

> All individuals who, per the Consent Order, received late fee refunds.

> Excluded from the class are the Honorable Lydia Kay Griggsby, any and all court staff who would otherwise qualify as putative class members, Plaintiffs' Counsel who would otherwise qualify as putative class members, and Defendants' Counsel who would otherwise qualify as putative class members.

### B. Final Approval Of Settlement

Having decided to certify the Settlement Class, the Court next considers whether to grant final approval of the Settlement Agreement. For the reasons set forth below, the Court **APPROVES** the Settlement Agreement.

#### 1. The Settlement Agreement Is Fair

First, the Court is satisfied that the Settlement Agreement is fair. In determining whether to approve the Settlement Agreement, the Court considers the factors set forth in Fed. R. Civ. P. 23(e)(2), which provide that the Court may find that the Settlement Agreement is fair, reasonable and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). "With regard to the 'fairness' element, the purpose of the inquiry is to protect against the danger of counsel—who are commonly repeat players in larger-scale litigation—from 'compromising a suit for an inadequate amount for the sake of insuring a fee.'" *In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at *3 (citations omitted). And so, the Court considers the following factors when determining fairness: (1) whether the proposed settlement is the product of good faith bargaining at arm's length; (2) the posture of the case at settlement; (3) the extent and sufficiency of discovery conducted; (4) counsel's experience with similar litigation and their relevant qualifications; and (5) any pertinent circumstances surrounding the negotiations. *Id.* (citations omitted).

In this case, these factors weigh in favor of determining that the Settlement Agreement is fair for several reasons. First, the facts before the Court show that the Settlement Agreement is fair and the product of good faith bargaining at arm's length, because the parties engaged in arm's length settlement negotiations through a neutral mediator, the Honorable Benson E. Legg (Ret.). ECF No. 110 at 22; ECF No. 114-1 at 14; *see also Hutton v. Nat's Bd. of Exam'rs in Optometry, Inc.*, No. 16-3025, 2019 WL 3183651, at \*5 (D. Md. July 15, 2019) ("reliance on a neutral mediator experienced in complex litigation [or a court-affiliated mediator], indicate the Settlement is fair and that it should be approved").

Second, the posture of this case also favors approving the Settlement Agreement, because the parties have engaged in significant discovery before reaching a settlement. ECF No. 110 at 23; ECF No. 114-1 at 16. The parties engaged in formal discovery from July 18, 2024, to June 3, 2025, which included the exchange of written discovery responses, substantial document productions, and depositions of several witnesses. ECF No. 114-1 at 16.

Lastly, the parties were represented by experienced counsel during their settlement negotiations. ECF No. 110-2; ECF No. 114-1 at 14-15 and 17; *In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at \*4 (noting satisfaction with plaintiffs' counsel who "are affiliated with well-regarded law firms with strong experience[,]" weighed toward finding proposed settlement was not the product of procedural impropriety). As discussed above, Class Counsel have a combined legal experience of more than 90 years and extensive experience litigating class action cases and financial disputes. And so, for these reasons, the Court is satisfied that the proposed Settlement Agreement is fair.

### 2. The Settlement Agreement Is Adequate

The Court is also satisfied that the proposed Settlement Agreement is adequate. In determining whether a settlement is adequate, the Court considers: (1) the relative strength and weaknesses of the plaintiffs' case on the merits; (2) the cost of additional litigation; (3) defendants' ability to pay a judgment; and (4) any opposition to the settlement. *In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at \*3. Here, these factors weigh in favor of determining that the Settlement Agreement is adequate for several reasons.

First, the parties acknowledge that there are strengths and weaknesses to the Plaintiffs' case. Notably the Defendants contest liability and damages, and the Plaintiffs also acknowledge that there are some litigation risks if this case were to proceed to trial, including the lack of

22

precedential cases with facts similar to this case.  ECF No. 114-1 at 18.  The parties also agree that further litigation of this case would be very expensive, because they would face the high costs of class certification briefing, summary judgment briefing, and trial.  *Id*. at 18-19.

In addition, the Plaintiffs represent that the Defendants have the ability to pay a judgment, but their recovery, if any, could be delayed for years absent a settlement.  *Id.*  Lastly, the Plaintiffs also represent that there are no objections to the proposed Settlement Agreement.  ECF No. 120.  And so, the Court is satisfied that the proposed Settlement Agreement is adequate.

### C.  The Notice Plan

The Court is also satisfied that adequate and meaningful notice has been provided to the Settlement Class Members, in compliance with the Court's Preliminary Approval Order (ECF No. 113 at 18-19), Section VIII of the Settlement Agreement, due process and Rule 23 of the Federal Rules of Civil Procedure.  Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Notice "need only 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *McAdams*, 26 F.4th at 158 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).  And so, to satisfy due process, notice "must be 'reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections.'"  *Id.* at 157-58 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In this case, the Settlement Administrator timely emailed and mailed Notice to the Settlement Class Members, using the addresses and email addresses the Defendants have on file for the Settlement Class Members, beginning on January 20, 2026.  ECF No. 120 at ¶ 2; ECF No. 114-5.  As of March 13, 2026, a total of 126,887 of the 127,242 attempted Notices were successfully delivered, resulting in a 99.72% success rate.  ECF No. 120 at ¶ 2.  The Settlement Administrator also administered a settlement website, which hosts downloadable copies of important case documents, provides answers to frequently asked questions, and includes the contact information of the Settlement Administrator.  ECF No. 120-1 at ¶ 4.

The Notice provided to the Settlement Class Members also contained details regarding the material terms of the Settlement Agreement, the deadlines for opt-outs and objections to the Settlement Agreement, the Settlement Website address at which Settlement Class Members may

access the Settlement Agreement, and information regarding the fairness hearing.  ECF No. 110-1 at ¶ 91.  And so, the Court is satisfied that the Settlement Class Members have been provided with sufficient information to evaluate whether to participate in the Settlement and that the Notice provided comports with Rule 23.

### D.  The Service Awards Are Reasonable

The requested service awards in this case are also reasonable, given the complex nature of this class action litigation and the contributions of the named Plaintiffs.  In deciding whether the proposed service awards are reasonable, this Court considers whether the Class Representatives took action to protect the Class, the degree to which the Class benefitted and the amount of time and effort spent by the named Plaintiffs.  *See Boger v. Citrix Sys., Inc.*, No. 19-01234, 2023 WL 3763974, at *11 (D. Md. June 1, 2023); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014).

Here, the Settlement Agreement provides that Class Counsel may request that the Court approve Service Awards to each Settlement Class Representative as follows: to Plaintiff Walter Black in an amount up to $7,500.00, and to Plaintiffs Keith Barr, Wayne Best, and David Fant Sr. in an amount up to $3,500.00.  ECF No. 114-2 at ¶ 118.  The record before the Court also shows that Plaintiffs Black, Barr, Best and Fant took steps to protect the interests of the Class, by spending considerable time pursuing this case.  Notably, Plaintiff Black has been involved in this case for almost 5 years and he participated in interviews and calls with counsel, provided documents and responded to written discovery requests.  ECF No. 115-1 at 24; *see also* ECF No. 114-4 (Gold Decl.) at ¶ 52; ECF No. 115-2 (Vernon Decl.) at ¶ 30; ECF No. 115-3 (Kagan Decl.) at ¶ 26.  Plaintiffs Barr, Best and Fant have also participated in the litigation, by providing detailed information regarding the circumstances of the Defendants' conduct, remaining in contact with Class Counsel during the litigation, and being prepared to participate in discovery.  ECF No. 115-1 at 24-25; *see also* ECF No. 114-4 (Gold Decl.) at ¶ 53; ECF No. 115-2 (Vernon Decl.) at ¶ 31; ECF No. 115-3 (Kagan Decl.) at ¶ 27.  Given this, the named Plaintiffs' actions in this litigation have directly benefited the Settlement Class Members.

The Court also observes that the proposed amounts of the Service Payments to these Plaintiffs are lower than incentive awards that other courts have approved in similar cases.  *See, e.g.*, *Boger*, 2023 WL 3763974 at *7 (approving $10,000 service award to the class representative for service over the course of four years); *Decohen*, 299 F.R.D. at 483 (approving

$10,000 service award to the class representative for service over the course of litigation from its inception to its settlement); *Birks v. Small Cmty. Specialists, LLC*, No. 23-00837, 2024 WL 5344437, at *1 (D. Md. Dec. 10, 2024) (awarding service award of $5,000 to class representatives). And so, the Court is satisfied that the requested Service Awards are reasonable.

### E. The Attorney's Fees And Costs

As a final matter, the Court will defer ruling on whether to award the Plaintiffs' request for an award of attorney's fees in the amount of **$1,897,980.94** and costs in the amount of **$84,019.06**, pending the receipt of additional information from Class Counsel to support these requests. *See* ECF No. 122.

### V.    CONCLUSION

For the foregoing reasons, the Court:

    (1) **GRANTS** the Plaintiffs' unopposed motion for final approval of class action settlement (ECF No. 114);

    (2) **APPROVES** the parties' Settlement Agreement;

    (3) **GRANTS-in-PART** the Plaintiffs' motion for award of attorneys' fees, costs and service awards (ECF No. 115); and

    (4) **AWARDS** Plaintiff Walter Black III a service award in the amount of **$7,500.00** and Plaintiffs Keith Barr, Wayne Best and David Fant, Sr. a service award in the amount of **3,500.00,** respectively.

In addition, the Court **ORDERS** that:

    (5) The Court has jurisdiction over the subject matter of this Action and over all Parties to this Action, including all Settlement Class Members.

    (6) This Final Approval Order incorporates the definitions in the Settlement Agreement, and all terms used in this Final Approval Order have the same meanings as set forth in the Settlement Agreement, unless otherwise defined.

    (7) The Court hereby **APPROVES** and **CONFIRMS** the Settlement embodied in the Settlement Agreement as being a fair, reasonable, and adequate settlement and compromise of this Action, adopts the Settlement Agreement as its Judgment, and orders that the Settlement Agreement shall be effective, binding, and enforced according to its terms and conditions.

    (8) The Court determines that Plaintiffs Walter Black III, Keith Barr, Wayne Best,

and David Fant Sr., have asserted claims individually and on behalf of the Settlement Class for unjust enrichment and money had and received against Defendants USAA General Indemnity Company, Garrison Property and Casualty Insurance Company, United Services Automobile Association, and USAA Casualty Insurance Company.

(9) The Court determines that the Settlement Agreement, which requires the payment of **$5,000,000** on behalf of Defendants, has been negotiated vigorously and at arm's length by Class Counsel, and further finds that, at all times, Plaintiffs have acted independently and that their interests are identical to the interests of the Settlement Class. The Court further finds that the Settlement Agreement arises from a genuine controversy between the Parties and is not the result of collusion, nor was the Settlement procured by fraud or misrepresentation.

(10) The Court determines that the Notice was provided to the Settlement Class, pursuant to the Preliminary Approval Order (ECF No. 113), by email and/or mailings to all persons in the Settlement Class who could be reasonably identified. That Notice was the best notice practicable under the circumstances and included individual notice to all Settlement Class Members who could be identified through reasonable efforts. Such Notice provides valid, due and sufficient notice of these proceedings and of the matters set forth therein, including the Settlement described in the Stipulation to all persons entitled to Notice, and such Notice has fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process. Furthermore, a notice of Settlement was mailed on September 26, 2025 to governmental entities as provided for in 28 U.S.C. § 1715. This notice, as given, complied with the aforementioned statute.

(11) Applying the Federal Rule of Civil Procedure 23(e)(2) factors, the Settlement set forth in the Settlement Agreement: (i) is in all respects fair, reasonable, and adequate to the Settlement Class, (ii) was the product of informed, arm's length negotiations among competent, able counsel; and (iii) was made based upon a record that is sufficiently developed and complete to have enabled the Class

Representatives and Defendants to adequately evaluate and consider the strengths and weaknesses of their respective positions. The Settlement relief is adequate, taking into account the costs, risks and delay of trial and appeal; the effectiveness of any proposed method of distributing the Settlement Fund to the Settlement Class; and the terms of any proposed award of attorneys' fees, including timing of payment. The Settlement Agreement treats Settlement Class Members equitably relative to each other. In finding the Settlement Agreement fair, reasonable, and adequate, the Court has also considered the number of opt-outs from the Settlement Agreement, the lack of any [meritorious] objections by Settlement Class Members, and the opinions of competent counsel concerning such matters. The Court has considered duly filed objections to the Settlement Agreement, if any, and to the extent such objections have not been withdrawn, superseded, or otherwise resolved, they are overruled and denied in all respects on their merits.

(12) The Class Representatives and Class Counsel have fairly and adequately represented and will continue to adequately represent and protect the interests of the Settlement Class Members in connection with the Settlement Agreement.

(13) One member of the Settlement Class has opted out of the Settlement Agreement. Thus, the individual with the surname **Walters** is not bound by the Settlement Agreement. *See* ECF No. 114-5 at Exhibit D.

(14) Because the Court approves the Settlement Agreement as fair, adequate, and reasonable, the Court authorizes and directs implementation of all terms and provisions of the Settlement Agreement.

(15) All Parties to this Action, and all Settlement Class Members (except those identified herein as having validly submitted notices of intention to opt-out of the Settlement) are bound by the Settlement as set forth in the Settlement Agreement and this Final Approval Order.

(16) The Court hereby **AFFIRMS** its conditional certification of the Settlement Class in its Preliminary Approval Order and approves the maintenance of the Action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) with the Settlement Class being defined as:

All individuals who, per the Consent Order, received late fees refunds.

Excluded from the class are the **Honorable Lydia Kay Griggsby**, and any and all court staff who would otherwise qualify as the putative class members, Plaintiffs' Counsel who would otherwise qualify as the putative class members, and Defendants' Counsel who would otherwise qualify as the putative class members.

(17) Pursuant to Federal Rule of Civil Procedure 23(g), the Court hereby confirms its prior appointment of **Tycko & Zavareei LLP, Timoney Knox, LLP, and Kagan Stern Marinello & Beard, LLC** as Class Counsel.

(18) Based on the Settlement Agreement, the Court hereby **DISMISSES** the Complaint and the Action against the Defendants with prejudice.

(19) As of the Effective Date of the Settlement and payment of the Net Settlement Fund, Plaintiffs, Settlement Class Members on their own behalf and on behalf of their present or former agents, employees, attorneys, accountants, representatives, advisers, investment bankers, trustees, parents, heirs, estates, executors, administrators, successors, and assigns, shall be deemed to have released each and all of the Released Parties from the Released Claims.

(20) As of the Effective Date of the Settlement and payment of the Net Settlement Fund, all release provisions shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, or future claims, demands, or causes of action.  Further, Plaintiffs, for themselves and on behalf of the Settlement Class, and Defendants assume the risk of any subsequent discovery of any matter, fact, or law, that, if now known or understood, would in any respect have affected or could have affected any such Party's entering into the Settlement.

(21) All members of the Settlement Class are hereby **BARRED** and **ENJOINED** from the institution and prosecution, either directly or indirectly, of any other actions in any court asserting any and all Released Claims against any and all Parties Released.

(22) It is further **ORDERED** that, Plaintiffs Walter Black III, Keith Barr, Wayne

28

Best, and David Fant, Sr. are hereby **AWARDED** Service Awards in recognition of their efforts in prosecuting this action. Plaintiff Black is **AWARDED** a Service Award in the amount of **$7,500.00**. Plaintiff Barr is **AWARDED** a Service Award in the amount of **$3,500.00**. Plaintiff Best is **AWARDED** a Service Award in the amount of **$3,500.00**. Plaintiff Fant is **AWARDED** a Service Award in the amount of **$3,500.00**.

(23) Without affecting the finality of this Judgment, the Court retains jurisdiction for purposes of implementing the Settlement Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder

(24) This case is hereby **DISMISSED** with prejudice.

Judgment shall be entered accordingly.

The Clerk is **DIRECTED** to **CLOSE** the case.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

29